207 S.W.3d 288 (2006)
In re S.L.M. & T.J.M.
Court of Appeals of Tennessee, at Nashville.
April 25, 2006 Session.
July 24, 2006.
Permission to Appeal Denied October 13, 2006.
*290 John E. Herbison, Nashville, Tennessee, for the appellant, Perry A. March.
Mark H. Levine, Los Angeles, California; and C.J. Gideon, Jr. and Gail Vaughn Ashworth, Nashville, Tennessee, for the appellees, Lawrence E. Levine and Carolyn R. Levine.
Permission to Appeal Denied by Supreme Court October 13, 2006.

OPINION
WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.
This appeal involves an acrimonious dispute over the custody of two adolescent children. The children's father and their maternal grandparents have litigated over custody in the courts of two states and the federal courts for the past nine years. The current proceeding began when the children and their father were expelled from Mexico following the father's indictment in Tennessee for murdering the children's mother. After the grandparents filed a petition in the Davidson County Juvenile Court seeking custody of their grandchildren, the father asserted that the juvenile court lacked jurisdiction to fashion *291 custody arrangements for the children. Following a hearing, the juvenile court determined that it had the authority to decide the children's custody and that temporary custody of the children should be awarded to their maternal grandparents. We granted the father's application for an interlocutory appeal and now find that the juvenile court has jurisdiction to decide the children's custody and that the record supports the court's decision to place the children in their grandparents' custody.

I.
This custody dispute can be traced back to August 1996 when Janet L. March disappeared from her home in Nashville under mysterious circumstances. Ms. March left behind her husband, Perry A. March, and their two children, Samson March, then six years old, and Tzipora March, then two.[1] The Marches had been experiencing marital difficulties, and Ms. March's parents, Lawrence and Carolyn Levine, and the law enforcement authorities in Nashville quickly began to suspect that Mr. March had played a role in Ms. March's disappearance. In September 1996, Mr. March and the children moved to the Chicago area.[2]
The venomous animosity between Mr. March and the Levines became palpable soon after Ms. March's disappearance. After he moved to Chicago, Mr. March filed a petition in the Circuit Court for Davidson County that exercised probate jurisdiction seeking control over Ms. March's property. The Levines contested the petition based on their conviction that Mr. March had murdered their daughter.[3] The Levines also obtained an order from a court in Illinois granting them bi-monthly visitation with their grandchildren in Illinois.[4]
Mr. March was aware of the Levines' attachment to their grandchildren and sought to exploit it in the legal wrangling over Ms. March's property and other matters. In May 1999, Mr. March moved with the children to the town of Ajijic in the Lake Chapala region of Mexico where his father, Arthur March, was already living. One of the reasons for the move was to frustrate the Levines' visitation with their *292 grandchildren.[5] After moving to Mexico, Mr. March repeatedly disregarded the Illinois court's visitation orders. In October 1999, the Illinois court granted the Levines visitation rights with their grandchildren in Mexico. Mr. March did not comply with this order, and the Illinois court eventually held him in both direct and indirect criminal contempt. In March 2000, Mr. March married a Mexican national, and his new wife began legal proceedings in Mexico to adopt the March children.[6]
In May 2000, the Illinois court granted the Levines thirty-nine days of "catch-up" visitation with their grandchildren. In June 2000, a Mexican court directed the Mexican authorities to take possession of the children and deliver them to the Levines in accordance with the Illinois court's order. On June 21, 2000, the Levines brought the children back to Nashville. Two weeks later, on July 3, 2000, they filed an "emergency petition" in the Davidson County Juvenile Court seeking custody of their grandchildren and the termination of Mr. March's parental rights. The juvenile court granted the Levines temporary custody of their grandchildren. When Mr. March sought relief from the Tennessee order in Illinois, the Illinois court invoked the doctrine of forum non conveniens and declined to act.
Mr. March then turned to the federal courts for assistance. In August 2000, he filed a complaint in the United States District Court for the Middle District of Tennessee asserting that the Levines had violated the Hague Convention on the Civil Aspects of International Child Abduction as implemented in the International Child Abduction Remedies Act. On October 4, 2000, the district court granted Mr. March's petition and ordered the Levines to return the children to Mr. March.[7] The United States Court of Appeals stayed the district court's order pending appeal. However, it dissolved the stay on April 19, 2001, when it issued its opinion affirming the district court.[8] The children were transported back to Mexico two days later on April 21, 2001.
The litigation involving Mr. March and the Levines continued unabated after the children were returned to Mexico. On May 20, 2004, the Circuit Court for Davidson County entered a revised order declaring that Ms. March was deceased and terminating the absentee receivership that had been commenced in 1996.[9] One month later, on June 21, 2004, another circuit *293 court granted a default judgment against Mr. March on the Levines' claim that he was civilly liable for the intentional and wrongful death of Ms. March. Following a trial on September 7, 2004, the circuit court entered a judgment awarding the Levines and the March children $6,000,000 in actual and punitive damages against Mr. March.[10]
In December 2004, a grand jury in Davidson County indicted Mr. March on one count of second degree murder for the death of Ms. March, one count of abuse of a corpse, and one count of tampering with evidence. Seven months later, on July 27, 2005, the Mexican government issued an order expelling Mr. March and the children from Mexico based on Mr. March's "irregular" conduct in Mexico. On August 3, 2005, the Mexican authorities detained Mr. March and then handed him over to law enforcement authorities from the United States who took him into custody and transported him to Los Angeles.
The expulsion order also directed the Mexican authorities to turn over the March children to the United States Consul in Guadalajara. However, the authorities were unable to locate the children. As it turned out, Mr. March's father had made his own arrangements for the children to leave the country. He placed the children on an airplane to Chicago where they were met by Mr. March's brother, Ron March, and his wife, Amy March, who live in Wilmette, Illinois, a suburb of Chicago. On August 8, 2005, Mr. March, while in custody in Los Angeles, drafted and signed a handwritten "Custodial Rights and Guardianship document," naming Ron March and his sister, Kathy March Breitowich, as joint guardians of the children.[11] On the same day, Ron and Amy March filed a petition in the Illinois court asking to be named guardians of his brother's children.
Mr. March waived extradition and was transported from Los Angeles to Nashville on August 12, 2005. He has remained in custody in Nashville ever since.
On August 15, 2005, the Levines returned to the Davidson County Juvenile Court, again seeking custody of their grandchildren. The trial court entered an ex parte order granting the Levines emergency, temporary custody of their grandchildren and directing law enforcement agencies in Tennessee and elsewhere to assist the Levines "in immediately retrieving the minor children" from Mr. March and Ron and Amy March. The Levines then domesticated the juvenile court's order in Illinois on the same day it was entered in Tennessee.
On the following day, August 16, 2005, Mr. March prepared an affidavit objecting to placing the children in the Levines' custody.[12] Armed with this affidavit, Ron *294 and Amy March requested an emergency hearing in the Illinois court seeking a stay of the execution of the August 15, 2005 order of the Davidson County Juvenile Court. The Levines moved to dismiss the guardianship petition filed by Ron and Amy March. The Illinois court conducted a hearing and declined to grant the stay. Thus, the Levines brought their grandchildren back to Nashville on the evening of August 16, 2005.[13]
The Davidson County Juvenile Court conducted a hearing regarding its jurisdiction on August 17, 2005. Mr. March was present at the hearing, but neither Ron nor Amy March was present even though they had been served with the Levines' petition and had notice of the hearing. On August 22, 2005, the court filed an order concluding that it had jurisdiction "over this matter and the parties." Accordingly, it determined that the Levines should retain temporary custody of their grandchildren. The court also appointed D. Scott Parsley, a lawyer practicing in Nashville, as the children's guardian ad litem, notwithstanding the Levines' objections.
In the meantime, the other civil and criminal proceedings involving Mr. March proceeded apace. On September 22, 2005, following a three-day trial, a jury empaneled by another Circuit Court for Davidson County returned a $222,449.10 verdict against Ron March, Ms. Breitowich, and her husband for fraudulently misappropriating and converting property belonging to Ms. March's estate and to the March children. The circuit court filed its judgment on this verdict on September 26, 2005.[14] In October 2005, a grand jury in Davidson County indicted Mr. March and his father for conspiracy and solicitation to murder the Levines.
Mr. March requested the juvenile court's permission to pursue a Tenn. R.App. P. 9 interlocutory appeal from its August 22, 2005 order. The juvenile court granted the motion, and on October 19, 2005, Mr. March filed an application for permission to appeal with this court. We granted the application on December 1, 2005.
In the meantime, the Levines pressed forward in the Illinois court with their motion to dismiss the petition for guardianship filed by Ron and Amy March. On November 17, 2005, the Illinois court filed an order staying the Illinois proceeding "until the Tennessee appellate court determines the pending interlocutory appeal of Perry March in Tennessee."

II.
We granted this interlocutory appeal to address one issue  whether under the facts of this case, the Davidson County Juvenile Court has jurisdiction to issue orders regarding the custody and status of the March children.[15] Mr. March asserts *295 that the juvenile court lacked jurisdiction under either the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[16] or any other statutory basis. The Levines respond that the juvenile court's jurisdiction to enter its August 22, 2005 order is supplied by Tenn.Code Ann. § 36-6-216(a)(2) and Tenn.Code Ann. § 36-6-106(b) (2005). We agree with the Levines.

A.

The Juvenile Court's Subject Matter Jurisdiction
In order to acquire jurisdiction over a particular controversy, a court must have jurisdiction not only over the parties but also over the subject matter of the proceeding. State ex rel. Whitehead v. Thompson, No. 01A01-9511-CH-00538, 1997 WL 749465, at *2 (Tenn.Ct.App. Dec.5, 1997) (No Tenn. R.App. P. 11 application filed). The concept of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. Toms v. Toms, 98 S.W.3d 140, 143 (Tenn.2003); Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn.2000). A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from legislative acts. Meighan v. U.S. Sprint Commc'ns Co., 924 S.W.2d 632, 639 (Tenn.1996); Kane v. Kane, 547 S.W.2d 559, 560 (Tenn.1977). The parties cannot confer subject matter jurisdiction on a court by either appearance, plea, consent, silence, or waiver. State ex rel. Dep't of Soc. Servs. v. Wright, 736 S.W.2d 84, 85 n. 2 (Tenn.1987); Dishmon v. Shelby State Cmty. Coll., 15 S.W.3d 477, 480 (Tenn.Ct. App.1999). Without subject matter jurisdiction, a court cannot enter a valid, enforceable order. Brown v. Brown, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); SunTrust Bank v. Johnson, 46 S.W.3d 216, 221 (Tenn.Ct.App.2000).
The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. Landers v. Jones, 872 S.W.2d 674, 675 (Tenn.1994); First Am. Trust Co. v. Franklin-Murray Dev. Co., 59 S.W.3d 135, 140 (Tenn.2001). Thus, when a court's subject matter jurisdiction is challenged, the first order of business is to ascertain the nature or gravamen of the case. Midwestern Gas Transmission Co. v. Baker, No. M2005-00802-COA-R3-CV, 2006 WL 461042, at *11 (Tenn.Ct.App. Feb.24, 2006) (No Tenn. R.App. P. 11 application filed). Then, it must be determined whether the Constitution of Tennessee or the General Assembly has conferred on the court the power to adjudicate cases of that sort. Newsome v. White, No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *2 (Tenn.Ct.App. Dec.22, 2003) (No Tenn. R.App. P. 11 application *296 filed); Levy v. Bd. of Zoning Appeals, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *3 (Tenn.Ct.App. Sept.27, 2001) (No Tenn. R.App. P. 11 application filed). Both determinations involve questions of law which this court reviews de novo without a presumption of correctness. Northland Ins. Co. v. State, 33 S.W.3d at 729; Southwest Williamson County Cmty. Ass'n v. Saltsman, 66 S.W.3d 872, 876 (Tenn.Ct.App.2001).
Juvenile courts are courts of record[17] with special and limited jurisdiction. Stambaugh v. Price, 532 S.W.2d 929, 932 (Tenn.1976); Juvenile Court of Shelby County v. State ex rel. Humphrey, 139 Tenn. 549, 555, 201 S.W. 771, 772 (1918). One of their purposes is to provide a simple and efficient judicial mechanism to protect the rights of children in a uniform manner throughout the state. Tenn.Code Ann. § 37-1-101(a)(4), -101(b) (2005); In re McCloud, No. 01A01-9212-CV-00504, 1993 WL 194041, at *6 (Tenn.Ct.App. June 9, 1993) (No Tenn. R.App. P. 11 application filed). Because juvenile courts were unknown at common law, they may exercise only those powers that have been conferred on them by statute. State ex rel. Hyatt v. Bomar, 210 Tenn. 249, 252-53, 358 S.W.2d 295, 296 (1962); West Tenn. Agape, Inc. v. Lipe, 515 S.W.2d 648, 649 (Tenn.Ct.App.1974). However, within their statutory jurisdiction, juvenile courts possess the full power to act. Cartwright v. Juvenile Court, 172 Tenn. 626, 629, 113 S.W.2d 754, 756 (1938); White v. State ex rel. Armstrong, No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *2 (Tenn.Ct. App. Feb.16, 2001) (No Tenn. R.App. P. 11 application filed).
The UCCJEA does not confer subject matter jurisdiction on juvenile courts to decide custody matters. By its own terms, the Act is a tool that is available only to courts that are "authorized under state law to establish, enforce, or modify a child custody determination."[18] Tenn.Code Ann. § 36-6-205(6). Thus, we must look elsewhere for the statute or statutes that confer subject matter jurisdiction on juvenile courts in cases of this sort.
The scope of the subject matter jurisdiction of Tennessee's juvenile courts is defined in Tenn.Code Ann. §§ 37-1-101(c), -103, & -104 (2005). Little would be gained by parsing these statutes to eliminate those that are inapplicable to this case. The juvenile court has subject matter jurisdiction over this proceeding as long as one jurisdictional prerequisite is satisfied. Accordingly, we will focus on the statute or statutes that provide jurisdictional authority for the juvenile court's actions in this case.
We turn first to the juvenile court's authority to enter its order on August 15, 2005, granting the Levines temporary custody of their grandchildren. The court's authority depends on the causes of action included in the Levines' petition that was filed on August 15, 2005. Despite the prolix nature of their petition, the Levines invoked Tenn.Code Ann. § 37-1-104(a)(2) as a jurisdictional basis for their request for custody of their grandchildren. Tenn. Code Ann. § 37-1-104(a)(2) explicitly gives juvenile courts concurrent jurisdiction with probate courts over proceedings to "[d]etermine custody or appoint a guardian of the person of a child." This authority derives directly from Tenn.Code Ann. §§ 34-2-101 to -106 (2001 & Supp.2005). Baltz v. Knight, No. 01A01-9606-JV-00263, *297 1998 WL 787526, at *4 (Tenn.Ct. App. Nov.13, 1998) (No Tenn. R.App. P. 11 application filed).
The allegations in the Levines' petition support an invocation of the juvenile court's authority to make an initial custody determination to protect the children pending the resolution of the other prayers for relief in the Levines' petition. In light of the disappearance of the children's mother and the incarceration of their father, the Levines had a legally colorable basis for seeking appointment as their grandchildren's guardians and for requesting the court to devise an appropriate custody arrangement while it was considering their request. Accordingly, we have concluded that Tenn.Code Ann. § 37-1-104(a)(2) gave the juvenile court jurisdiction and authority to enter the August 15, 2005 order granting the Levines custody of their grandchildren.
By the time the juvenile court entered its August 22, 2005 order, the Levines had amended their petition to include an additional basis for the juvenile court to exercise jurisdiction over this case. On August 17, 2005, the Levines amended their petition to include an allegation that their grandchildren were dependent and neglected. Tenn.Code Ann. § 37-1-103(a)(1) explicitly grants juvenile courts exclusive original jurisdiction over proceedings in which children are alleged to be dependent and neglected.[19] Juvenile courts have the authority to make custody decisions with regard to children who are the subjects of a dependent and neglect proceeding. Thus, when the juvenile court entered its temporary custody order on August 22, 2005, it had the authority and jurisdiction to do so under both Tenn.Code Ann. § 37-1-103(a)(1) and Tenn.Code Ann. § 37-1-104(a)(2).

B.

The Juvenile Court's Exercise of Its Jurisdiction
Determining that the juvenile court had subject matter jurisdiction to enter an order regarding the custody of the March children does not end the matter. We must still decide whether the court properly exercised its jurisdiction in light of the essentially undisputed facts. It is at this point that the requirements of the UCCJEA become relevant. We have determined that the juvenile court properly placed the March children in the Levines' custody in light of Tenn.Code Ann. § 36-6-216(a)(2) and Tenn.Code Ann. § 36-6-106(b).
One of the purposes of enacting the UCCJEA was to bring order out of the chaos that marked interstate custody disputes under the Uniform Child Custody Jurisdiction Act (UCCJA)[20] and the Parental Kidnapping Prevention Act of 1980 (PKPA).[21]Yurgel v. Yurgel, 572 So.2d 1327, 1329-30 (Fla.1990). The Act accomplished this purpose by, among other things, providing a clarified and prioritized version of the PKPA's four-part hierarchy for the exercise of subject matter jurisdiction in cases involving the custody of children. Staats v. McKinnon, 206 S.W.3d 532, 546-47 (Tenn.Ct.App.2006). These rules are now codified in Tenn.Code Ann. § 36-6-216(a).
*298 Tenn.Code Ann. § 36-6-216(a) provides a prioritized basis for the exercise of subject matter jurisdiction in cases in proceedings involving the custody of a child. Courts with "home state" jurisdiction as defined in Tenn.Code Ann. § 36-6-216(a)(1) have priority over all other courts; followed by courts with "significant connection/substantial evidence" jurisdiction as defined in Tenn.Code Ann. § 36-6-216(a)(2); courts with "convenient forum" jurisdiction as defined in Tenn.Code Ann. § 36-6-216(a)(3); and courts with "vacuum" jurisdiction as defined in Tenn.Code Ann. § 36-6-216(a)(4). Thus, the issues remaining to be decided in this case are (1) where in this statutory hierarchy the Davidson County Juvenile Court falls and (2) whether the courts in any other jurisdiction fall higher in the hierarchy.
Both the juvenile court and the Levines concluded that the juvenile court meets the requirements for "significant connection/substantial evidence" jurisdiction under Tenn.Code Ann. § 36-6-216(a)(2). Because Mr. March does not take issue with this conclusion, we need not detail here the contents of this already voluminous record regarding whether the March children and at least one parent have a significant connection with Tennessee[22] or that significant evidence involving the children is available in Tennessee.[23] We have thoroughly reviewed the record and have concluded that it contains substantial evidence supporting the juvenile court's exercise of jurisdiction under Tenn.Code Ann. § 36-6-216(a)(2).
The UCCJEA permits the Davidson County Juvenile Court to exercise its Tenn.Code Ann. § 36-6-216(a)(2) jurisdiction to make an initial custody decision only if no other court has Tenn.Code Ann. § 36-6-216(a)(1) jurisdiction. Thus, we must now determine whether any other court qualified for Tenn.Code Ann. § 36-6-216(a)(1) jurisdiction on or before August 22, 2005. The only two courts that could possibly have a claim to Tenn.Code Ann. § 36-6-216(a)(1) jurisdiction are the courts in Illinois and Mexico.[24]
We turn first to the Mexican courts because of the emphasis placed on Mexico in Mr. March's brief. The Mexican courts could not claim "home state" jurisdiction, even though Mexico may have been the children's "home state" prior to August 2005. The principal reason for disqualifying Mexican courts is the Mexican government's July 27, 2005 order expelling Mr. March and his children from the country for at least ten years. As a result of this order, neither the children, nor Mr. March, nor any person "acting as a parent" lives in Mexico.[25] It is equally clear that both the children's and Mr. March's absences from Mexico are not the sort of "temporary absence" envisioned by Tenn.Code Ann. § 36-6-205(7). Finally, this record contains no evidence that any custody proceedings involving the March children have been commenced in Mexico or that a Mexican court has asserted or is attempting to assert custody jurisdiction over the March children. To the contrary, the actions of the Mexican officials reflect their settled intent to place the fate of the March children in the hands of courts in the United States.
*299 Likewise, the courts of Illinois have no basis for exercising Tenn.Code Ann. § 36-6-216(a)(1) jurisdiction with regard to the March children. The undisputed facts clearly demonstrate that Illinois was not the home state of the March children when the Levines filed their petition in the Davidson County Juvenile Court.[26] Likewise, the undisputed facts show that Illinois had not been the children's home state for six months prior to the filing of the petition[27] and that neither of their parents continued to live in Illinois.
Determining whether a court of another state may exercise Tenn.Code Ann. § 36-6-216(a)(1) jurisdiction in this case is a question of law because the facts relevant to the question of jurisdiction are essentially undisputed. We have conducted an independent review of the record and have determined that neither the courts in Mexico nor the courts in Illinois have a basis for asserting Tenn.Code Ann. § 36-6-216(a)(1) jurisdiction over the March children. Accordingly, we conclude that the juvenile court has jurisdiction under Tenn. Code Ann. § 36-6-216(a)(2) to hear and adjudicate issues relating to the custody of the March children.
In addition to Tenn.Code Ann. § 36-6-216(a)(2), Tenn.Code Ann. § 36-6-106(b) provides another statutory basis for the juvenile court's decision to enter an order regarding the custody of the March children. This statute, enacted in 2000 at the request of the Levines,[28] provides that in any proceeding requiring a court to make a custody determination, "the court has jurisdiction to make an initial custody determination regarding a minor child . . . upon finding that the custodial parent has been convicted of or found civilly liable for the intentional and wrongful death of the child's other parent or legal guardian." It is undisputed that on June 21, 2004, a circuit court in Davidson County, having acquired personal jurisdiction over Mr. March, entered an order concluding that Ms. March was intentionally and wrongfully killed by Mr. March. This evidence provides a sufficient factual predicate for the juvenile court's conclusion that it had jurisdiction to enter both the August 15, 2005 and August 22, 2005 custody orders.

III.
We affirm the orders of August 15, 2005 and August 22, 2005 granting the Levines temporary custody of the March children and remand the case to the juvenile court for whatever further proceedings may be required. We tax the costs of this appeal to Perry Avram March and his surety for which execution, if necessary, may issue.
NOTES
[1] This court customarily uses pseudonymous designations for the parties' names in appeals from juvenile court. We are departing from the practice in this case, however, because the facts are widely known, and the names of the parties have already been used in opinions issued by this court, the United States District Court for the Middle District of Tennessee, and the United States Court of Appeals for the Sixth Circuit.
[2] Mr. March was born in East Chicago, Indiana and moved to Nashville in 1985 to attend law school. He married Ms. March in 1987. Ms. March was a Nashville native, and her family has deep roots in the Nashville community.
[3] The circuit court appointed a conservator for Ms. March's property because of the rancor between Mr. March and the Levines. This court was eventually required to overturn a proposed settlement between the conservator and Mr. March because the circuit court had refused to permit the Levines to intervene in the case to oppose distributing any of Ms. March's property to Mr. March. In Estate of March, No. 01A01-9708-PB-00437, 1999 WL 140760, at *5 (Tenn.Ct.App. Mar.17, 1999) (No Tenn. R.App. P. 11 application filed). Following the remand, the circuit court permitted the Levines to pursue a wrongful death claim against Mr. March and ultimately awarded a $113,500,000 default judgment against Mr. March. This court reversed that judgment after finding that the trial court erred by permitting the Levines to pursue their wrongful death claim. March v. Levine, 115 S.W.3d 892, 912-13 (Tenn.Ct.App. 2003).
[4] The Levines exercised their visitation rights on a regular basis as long as Mr. March and the children were residing in Illinois.
[5] One of the children's guardians ad litem in Illinois observed that Mr. March "intended to use the children as pawns in a vendetta" with the Levines and that Mr. March was using visitation as a "price tag for legalistic maneuvering, posturing and unsuccessful interchange of settlement issues." Another guardian ad litem reported to the Illinois court that

March stated to me that he saw no harm or danger to his children visiting the Levines, however, March would not permit visitation without receiving something in return. March said he would only permit the Levines to have contact with their grandchildren if the Levines would "drop all ancillary civil litigation" against him and help him re-obtain his law license. If the Levines would do that, March said they could see the children anytime they wanted. . . . March then warned me that if the Court allowed the Levines visitation with the children without his requisite demands, he would take the children out of the United States to either Singapore or Mexico.
[6] The record contains no indication of the status or outcome of this proceeding.
[7] March v. Levine, 136 F.Supp.2d 831, 861 (M.D.Tenn.2000).
[8] March v. Levine, 249 F.3d 462, 475 (6th Cir.2001), cert. denied, 534 U.S. 1080, 122 S.Ct. 810, 151 L.Ed.2d 695 (2002).
[9] Levine v. March, No. 96P-1702 (7th Cir. Ct., Order filed May 20, 2004).
[10] Levine v. March, No. 03C-2548 (3d Cir. Ct., Judgment filed Sept. 13, 2004).
[11] Specifically, Mr. March stated:

At this time, I am incarcerated, and not able to physically care for them [the children]. I hereby grant and empower, jointly and severally, my brother, Ron Marc March, Esq., of Illinois, and my sister, Kathy P. March Breitowich, of Indiana, with full rights of guardianship and custody of both Sammy and Tzip.
It is my firm desire that no one other than my loving brother and/or sister, be entrusted with their care and custody.
[12] Mr. March stated:

5. As the custodian I do not want my children to have any contact with Carolyn Levine, Lawrence Levine and Mark Levine because said contact will cause my children irreparable emotional distress and harm. Carolyn Levine, Lawrence Levine and Mark Levine have made numerous mis-representations to my children which have caused them in the past substantial emotional harm.
6. It is my desire and direction the children not be removed from the State of Illinois unless by Ron March and/or Amy March. It is my expressed intent and desire the children not appear or be present in the State of Tennessee. Due to the publicity of my pending criminal action the children's presence in the state would cause them severe and irreparable emotional harm.
[13] In addition to the proceeding in Illinois, a Tennessee lawyer purporting to represent the March children, filed a petition in the Davidson County Juvenile Court on August 16, 2005, requesting the court to vacate its emergency custody order on the ground "that jurisdiction does not lie in Tennessee." In its August 22, 2005 order, the juvenile court, following the recommendation of the children's guardian ad litem, declined to appoint a lawyer for the children.
[14] Levine v. March, No. 02C-3498, 2005 WL 4155263 (7th Cir. Judgment filed Sept. 22, 2005).
[15] Mr. March's brief also contains non-jurisdictional arguments. He asserts that incarcerated parents have a right to make decisions regarding their children's custody and that the juvenile court's ex parte order entered on August 15, 2005 violated his due process rights. The scope of appeals under Tenn. R.App. P. 9 and Tenn. R.App. P. 10 are limited to the issues certified in the appellate court's order granting the appeal. Tenn. Dep't of Mental Health & Mental Retardation v. Hughes, 531 S.W.2d 299, 300 (Tenn.1975); Heatherly v. Merrimack Mut. Fire Ins. Co., 43 S.W.3d 911, 914 (Tenn.Ct.App.2000); Montcastle v. Baird, 723 S.W.2d 119, 122 (Tenn.Ct. App.1986). Mr. March's non-jurisdictional arguments are beyond the scope of the issue defined in our order granting the Tenn. R.App. P. 9 appeal and need not be considered in order to address the jurisdictional issue we agreed to decide. Therefore, we will not address the non-jurisdictional issues and arguments contained in Mr. March's brief.
[16] Unif. Child Custody Jurisdiction & Enforcement Act §§ 101-405, 9 U.L.A. 649 (1999 & Supp.2005) (codified at Tenn.Code Ann. §§ 36-6-201 to -243 (2005)).
[17] Tenn.Code Ann. § 37-1-159(a) (2005).
[18] The expansive definition of "child custody determination" is found in Tenn.Code Ann. § 36-6-205(3).
[19] The expansive definition of a "dependent and neglected child" is found in Tenn.Code Ann. § 37-1-102(b)(12) (2005).
[20] Unif. Child Custody Jurisdiction Act §§ 1-28, 9 U.L.A. 261 (1999).
[21] Pub.L. No. 96-611, §§ 6-10, 94 Stat. 3566, 3568-73 (1980) (codified as amended at 28 U.S.C.A. § 1738A (West 1994 & Supp.2006), 42 U.S.C.A. §§ 654-55, 663 (West 2003 & Supp.2006)).
[22] Tenn.Code Ann. § 36-6-212(a)(2)(A).
[23] Tenn.Code Ann. § 36-6-216(a)(2)(B).
[24] The UCCJEA requires us to treat the courts of a foreign country as the courts of another state. Tenn.Code Ann. § 36-6-208.
[25] It is undisputed that Mr. March's father no longer resides in Mexico. As far as this record shows, Mr. March has never asserted that his current wife is a person acting as a parent for the purpose of Tenn.Code Ann. § 36-6-216(a)(1).
[26] Even though the March children had been in Illinois for some period between August 3, 2005 and August 16, 2005, they had not been living with a parent or a person acting as a parent for at least six consecutive months. See Tenn.Code Ann. § 36-6-205(7).
[27] Illinois ceased being the March children's home state in May 1999 when Mr. March and the children moved to Mexico.
[28] Act of May 4, 2000, ch. 683, § 2, 2000 Tenn. Pub. Acts 2010, 2010. The Tennessee General Assembly enacted this Act, known as the "March Amendments," after Mr. Levine explained to the House Committee on Children and Family Affairs that "Janet March was murdered by her husband and we've got a civil judgment stating that he wrongfully and intentionally murdered my daughter. My grandchildren are living with the murderer right now down in Mexico and, if by some miracle they were ever to come back to the State of Tennessee, I would like the law to be very clear that I have a right to come and ask to take away their custody from the murderer." March v. Levine, 136 F.Supp.2d at 854.