IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 25, 2024 Session

## THOMAS MARLIN ROBERTS ET AL. v. TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION ET AL.

**Appeal from the Chancery Court for Tipton County**
**No. 37356     Kasey Culbreath, Judge**

_____

### No. W2023-01577-COA-R3-CV

_____

Homeowners removed underground storage tanks found on their property. After finding evidence of petroleum contamination where the tanks had been located, the Tennessee Department of Environment and Conservation began an extensive cleanup process. The Department subsequently issued a cost-recovery order against the homeowners to recoup its expenditures. The homeowners petitioned for review of the cost-recovery order to the Underground Storage Tanks and Solid Waste Disposal Control Board, which upheld the order. The homeowners appealed this initial ruling to the Board and the order was again upheld. The homeowners then appealed the Board's final ruling to the trial court, which reversed the Board's judgment. The Department and the Board now appeal. Because we determine that the trial court lacked subject matter jurisdiction, we vacate the trial court's order and remand the matter for transfer to the proper court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY ARMSTRONG, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; J. Peter Murrey, Senior Assistant Attorney General, for the appellants, Tennessee Department of Environment and Conservation and Tennessee Underground Storage Tanks and Solid Waste Disposal Control Board.

Steven G. Roberts, Collierville, Tennessee, for the appellees, Thomas Marlin Roberts and Angela Roberts.

**OPINION**

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellees Thomas Marlin Roberts and his wife, Angela Roberts (together, "the Roberts"), purchased the subject property in 2000. While renovating the property in 2010, the Roberts discovered three rusted-out 500-gallon storage tanks buried under a large concrete slab. The Roberts moved the three tanks and the surrounding soil onto their residential property and re-covered the area with concrete.

Appellant the Tennessee Department of Environment and Conservation ("TDEC") was notified of the tanks by a third party in August 2011. TDEC then seized the tanks and soil removed from the property and began investigating the possibility of groundwater contamination. The testing revealed an elevated presence of chemicals associated with petroleum. As part of the cleanup process that continued until April 2012, the new concrete slab installed by the Roberts and over a thousand tons of soil were removed.

In 2016, TDEC issued a cost-recovery order against the Roberts pursuant to its authority under the Tennessee Petroleum Underground Storage Act ("the Storage Tank Act"), Tennessee Code Annotated section 68-215-101 *et seq.* TDEC asserted that the Roberts were responsible for the reimbursement of the $166,103.65 expended in the investigation and cleanup of the property. The Roberts filed a petition for review of the cost-recovery order, requesting a hearing before Appellant the Underground Storage Tanks and Solid Waste Disposal Control Board ("the Board").

The contested case hearing was held before an administrative judge in June 2017. On February 28, 2018, the judge issued an initial order upholding TDEC's cost-recovery order, less the $3,807.36 cost for the Roberts to replace a lighted sign damaged during the cleanup process.

The Roberts appealed the initial order to the Board. Accordingly, the initial order did not become final, the administrative record was transmitted to the Board, and a second administrative judge was assigned to sit with the Board for the rehearing of the case. The hearing was held in December 2021, and the Board issued its final order on January 19, 2022. The Board found that TDEC effectively established the Roberts as responsible parties under the Storage Tank Act. The Board concluded that the Roberts failed to prove their affirmative defense that the release happened prior to the effective date of the Storage Tank Act. The Board upheld TDEC's cost-recovery order, offset by $3,807.36 in damages to the Roberts' property.

The Roberts then petitioned to the Tipton County Chancery Court ("the trial court")

---

[1] This case involves a lengthy procedural history. We will discuss only the events material to our holding in this appeal.

for judicial review of the Board's final order. The trial court reversed the Board's judgment by order of October 18, 2023. The trial court concluded that the Roberts did not meet any definition of responsible party within the Storage Tank Act. The trial court also determined that TDEC had not shown that the Roberts' actions contributed to the release of petroleum. Because "there was no evidence that there <u>was</u> a release 'or other event' that occurred" after the effective date of the Storage Tank Act, the trial court ruled that TDEC could not seek cost-recovery provisions against the Roberts. The trial court therefore found the Board's final order upholding the cost-recovery assessment to be "arbitrary and capricious, a clearly unwarranted exercise of discretion, and [] unsupported by evidence that is both substantial and material in light of the entire record." The trial court set aside the assessment against the Roberts and awarded them the $3,807.36 cost of the damaged sign.

It is from this order that TDEC and the Board now appeal.

## II. STANDARD OF REVIEW

The appellants ask us to review "whether the Board's decision should be affirmed because it matches statutory provisions and is not arbitrary or capricious or characterized by an abuse of discretion." However, we have determined that the question of the trial court's subject matter jurisdiction is dispositive of this appeal.[2] Whether subject matter jurisdiction exists is a matter of law that we review de novo, without a presumption of correctness. **Chapman v. DaVita, Inc.**, 380 S.W.3d 710, 713 (Tenn. 2012) (citing **Northland Ins. Co. v. State**, 33 S.W.3d 727, 729 (Tenn. 2000)). In this appeal, the existence of subject matter jurisdiction depends upon the construction of multiple statutes. Statutory interpretation is also a question of law reviewed de novo without a presumption of correctness. **Coffee Cnty. Bd. of Educ. v. City of Tullahoma**, 574 S.W.3d 832, 839 (Tenn. 2019) (citations omitted).

## III. ANALYSIS

This matter originated as a cost-recovery action by TDEC pursuant to the Storage Tank Act, as last amended in 2013. *See* Tenn. Code Ann. § 68-215-115(a); 2013 Tenn. Laws Pub. Ch. 181 (S.B. 159). The Roberts' petition for review of the cost-recovery order and their subsequent appeal of the Board's initial order were similarly made pursuant to the Storage Tank Act. *See* Tenn. Code Ann. § 68-215-119(a–b). So too does the Storage Tank Act provide a method for obtaining judicial review of the Board's final order.

---

[2] Although not originally briefed by either party, this Court requested and received supplemental briefing on the question of subject matter jurisdiction from both parties. *See* **State v. Bristol**, 654 S.W.3d 917, 926–27 (Tenn. 2022) (noting that "an appellate court *must* consider subject-matter jurisdiction, regardless of whether that issue was presented by the parties or addressed below"; instructing that "when an appellate court considers an issue that has not been properly presented, it must give the parties 'fair notice and an opportunity to be heard on the dispositive issues'"; and finding that "supplemental briefing ordinarily will be 'the best way to test a notion of the court's own invention'" (citations omitted)).

Specifically, the Storage Tank Act provides:

> An appeal may be taken from any final order or other final determination of the board by any party, including the department, who is or may be adversely affected thereby to the chancery court of Davidson County. *The chancery court of Davidson County shall have exclusive original jurisdiction of all review proceedings instituted under the authority and provisions of this chapter*; provided, that the judicial review of any final decision of the board shall be made pursuant to the procedures established and set forth in the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.

Tenn. Code Ann. § 68-215-119(c) (emphasis added).

In a typical case, section 68-215-119(c)'s grant of exclusive jurisdiction would be the end of our inquiry, and we would easily conclude that the Roberts filed their petition in the incorrect court. Indeed, the Legislature's decision to use the word "exclusive" in its description of a court's jurisdiction typically denotes that cases may only be filed in that single jurisdiction. In a case involving a different statute governing claims against the State of Tennessee, we explained,

> The [statute] clearly specifies that the exclusive original jurisdiction to hear cases of that type vests only in the circuit courts of this state. The converse of this is that no other courts of this state, but for the exception above noted in the statute, can take jurisdiction of this class of cases.

***Seaberg v. Madison Cnty. Highway Dep't***, No. C.A. 85-202, 1987 WL 5702, at *2 (Tenn. Ct. App. Jan. 26, 1987) (involving the Tennessee Governmental Tort Liability Act); *see also **Hawkins v. Tenn. Dep't of Corr.***, 127 S.W.3d 749, 754 (Tenn. Ct. App. 2002) (noting that "[e]ven where authorization for suit against the state exists, 'suits may only be brought in those courts and under those conditions specified by the legislature'" (quoting ***Crowe v. John W. Harton Mem'l Hosp.***, 579 S.W.2d 888, 890 (Tenn. Ct. App. 1979)). If the additional forums listed in the UAPA also had the authority to hear appeals from the Board's final orders, the Davidson County Chancery Court's jurisdiction would, by definition, no longer be exclusive. *See exclusive*, *Black's Law Dictionary* (12th ed. 2024) (defined as "[l]imited to a particular person, group, entity, or thing"). It is not our prerogative to assume that the Legislature included superfluous language in its statutes. *See **City of Caryville v. Campbell Cnty.***, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983); ***Rich v. Tenn. Bd. of Med. Examiners***, 350 S.W.3d 919, 926 (Tenn. 2011).

In arguing that their case was nevertheless brought before the proper court, however, the Roberts look to the Uniform Administrative Procedures Act ("the UAPA"), last amended in 2021. *See* Tenn. Code Ann. §§ 4-5-101 *et seq.*; 2021 Tenn. Laws Pub. Ch. 461 (S.B. 212). Indeed, the UAPA provides instruction regarding the review of an

administrative agency's decisions and specifically states that it "shall be the only available method of judicial review[,]" Tenn. Code Ann. § 4-5-322(a)(1). The Roberts emphasize that the UAPA was "designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination and shall be applied accordingly." Tenn. Code Ann. § 4-5-103(a)(1). The statute also states that the UAPA "shall control" where a conflict arises between itself "and any statute, general or specific[,]" while specifically providing that "compliance with the procedures prescribed by this chapter does not obviate the necessity of complying with procedures prescribed by other provisions of this code." Tenn. Code Ann. § 4-5-103(b). As relevant here, pursuant to a 2018 amendment to the UAPA, "venue" under that statute is dictated by the following:

> (i) Proceedings for review are instituted by filing a petition for review in chancery court.
> (ii) Except as provided in subdivisions (b)(1)(B), venue for appeals of contested case hearings shall be in the chancery court nearest to the place of residence of the person contesting the agency action or alternatively, at the person's discretion, in the chancery court nearest to the place where the cause of action arose, or in the chancery court of Davidson County.

Tenn. Code Ann. § 4-5-322(b)(1)(A); *see also* Tenn. Code Ann. § 4-5-322(b)(1)(B) (containing specific filing guidance for situations not applicable here); *cf.* 2018 Tenn. Laws Pub. Ch. 1021 (S.B. 2603), *eff.* July 1, 2018.[3] Thus, the Roberts argue that because it was the "chancery court nearest to the place of residence of the person[s] contesting the agency action[,]" the Tipton County Chancery Court had jurisdiction over their petition for judicial review of the Board's final order.

In support of their assertion that the UAPA controls this dispute, the Roberts point to the statement in the Storage Tank Act that "the judicial review of any final decision of the board shall be made pursuant to the procedures established and set forth in the [UAPA]." Tenn. Code Ann. § 68-215-119(c). According to the Roberts, this evinces not only a conflict between the UAPA and the Storage Tank Act, but a conflict within the Storage Tank Act itself, both of which should be resolved in favor of the venue provisions in the UAPA. Pursuant to section 4-5-103(c), discussed *supra*, we agree with the Roberts that in the event of a conflict between the Storage Tank Act and the UAPA, the provisions of the UAPA would control. Based on established principles of statutory interpretation, however, we respectfully disagree that such a conflict exists in this case.

"Our role in statutory interpretation is to give a statute the full effect of the General Assembly's intent without unduly restricting or expanding the statute's intended scope."

---

[3] The prior version of this section provided that "[p]roceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute." Tenn. Code Ann. § 4-5-322(b)(1)(A) (2017).

***State v. Marshall***, 319 S.W.3d 558, 561 (Tenn. 2010) (citing ***Larsen-Ball v. Ball***, 301 S.W.3d 228, 232 (Tenn. 2010)). To do so, we "examine the text of the statute and, if the language used is unambiguous, we simply apply the plain meaning of the words used in the statute." ***Garrison v. Bickford***, 377 S.W.3d 659 (Tenn. 2012) (citations omitted). We "presume that the legislature says in a statute what it means and means in a statute what it says there." ***Rich***, 350 S.W.3d at 926 (quoting ***Gleaves v. Checker Cab Transit Corp.***, 15 S.W.3d 799, 803 (Tenn. 2000)). Consequently, a court must "reconcile inconsistent or repugnant provisions of a statute" and "give effect to every word, phrase, clause and sentence of the act in order to achieve the Legislature's intent[.]" ***City of Caryville***, 660 S.W.2d at 512 (Tenn. Ct. App. 1983) (citing ***Tidwell v. Collins***, 522 S.W.2d 674, 676–77 (Tenn. 1975)). A statute should be construed "so that no part will be inoperative, superfluous, void or insignificant[,]" and "so that no section will destroy another." ***Id.***

Beyond a duty to avoid internal conflict within a statute, a court has a duty "to avoid a construction which will place one statute in conflict with another, and the Court should resolve any possible conflict between the statutes in favor of each other, whenever possible, so as to provide a harmonious operation of the laws." ***Parkridge Hosp., Inc. v. Woods***, 561 S.W.2d 754, 755 (Tenn. 1978). As our supreme court has explained, "statutes should not be interpreted in isolation. The overall statutory framework must be considered, and '[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both.'" ***Coffee Cnty. Bd. of Educ.***, 574 S.W.3d at 845–46 (quoting ***In re Kaliyah S.***, 455 S.W.3d 533, 552 (Tenn. 2015)). As such, "[r]epeals by implication . . . are disfavored in Tennessee, and therefore 'will be recognized only when no fair and reasonable construction will permit the statutes to stand together.'" ***Hayes v. Gibson Cnty.***, 288 S.W.3d 334, 337 (Tenn. 2009) (quoting ***Cronin v. Howe***, 906 S.W.2d 910, 912 (Tenn. 1995)). As a corollary of this doctrine,

> it has come to be an established rule in the construction of statutes that a subsequent act, treating a subject in general terms *and not expressly contradicting the provisions of a prior special statute,* is not to be considered as intended to affect the more particular and specific provisions of the earlier act, unless it is absolutely necessary so to construe it in order to give its words any meaning at all.

***Id.*** at 339 (quoting ***State v. Safley***, 172 Tenn. 385, 112 S.W.2d 831 (1938)); *see also* ***Knox County Educ. Ass'n v. Knox County Bd. of Educ.***, 60 S.W.3d 65, 74 (Tenn. Ct. App. 2001) (stating that "[a] repeal by implication is found only when a conflict between the acts is inescapable"). Finally, we note that our duty to harmonize statutes whenever possible appears to be reflected in section 4-5-103(b), which clearly provides that while the UAPA will control over conflicting law, this requirement does not mean that parties are excused from compliance with the procedures prescribed by other applicable statutes.

Keeping these overarching principles in mind, we turn to address the central dispute

- 6 -

in this case: whether the plain meaning and intended effect of the relevant provisions of the Storage Tank Act and the UAPA result in an inescapable conflict.[4] From our review, neither the language nor the purpose of either statute is inconsistent with that of the other.

As an initial matter, we cannot conclude that the specification of exclusive jurisdiction in section 68-215-119(c)'s first clause is in conflict with the deference to the UAPA's procedures set out in its second clause. Of course, the distinction between the focus of these provisions, as discussed, *infra*, is itself enough to dispel the finding of overlap between these clauses. We further note, however, that beyond its venue provisions, section 4-5-322 governs a host of procedures relevant to this matter. For example, subsection 4-5-322(b)(2) addresses the proper procedure when a petition for review is filed in an inappropriate court, whether the time for filing a petition for review is extended by filing a request for reconsideration, and which parties should be served with a petition for review. Other subsections control, inter alia, whether an agency's decision is stayed pending review, when the record should be submitted to the reviewing court, and the standard of review of an agency's decision. *See generally* Tenn. Code Ann. § 4-5-322(c), (d), & (h). Clearly, these procedures can be complied with even while enforcing the exclusive jurisdiction clause in 68-215-119(c). Our conclusion is reinforced by the fact that if the UAPA's jurisdictional pronouncement in section 4-5-322(b)(1)(A)(ii) was meant to be included among the "procedures" adopted in section 68-215-119(c), this reading would require us to wholly ignore the Storage Tank Act's own jurisdictional pronouncement made within the same sentence. *See City of Caryville*, 660 S.W.2d at 512; *Garrison*, 377 S.W.3d at 663 ("Every word in a statute is presumed to have meaning and purpose." (citations omitted)). We cannot imagine the Legislature intended such an absurd result. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (explaining that courts may presume "that the General Assembly 'did not intend an absurdity.'" (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)). And in fact, the UAPA contains a similar provision contemplating that its requirements are not the only ones with which parties appealing an agency's final decision must comply. *See* Tenn. Code Ann. § 4-5-103(b). So then, the Storage Tank Act's vestment of jurisdiction over cases instituted according to its authority does not inescapably conflict with its subsequent deference to the procedures for judicial review outlined in the UAPA. The plain language of section 68-215-119(c) can therefore be read consistently with itself, and with both clauses given full effect.

Even more importantly, by their own terms, the provisions expressly address disparate topics: while section 68-215-119(c) explicitly discusses jurisdiction, section 4-5-322(b)(1)(A)(ii) mentions only venue. We generally presume that the Tennessee General Assembly "purposefully chooses the words used in statutory language[.]" *Stewart v. State*, 33 S.W.3d 785, 792 (Tenn. 2000). And although "some of the reported cases have tended to blur the line between the concepts of subject matter jurisdiction and venue[,]" they are

---

[4] Neither party has argued that the statutes at hand are ambiguous.

- 7 -

in fact "two separate concepts."[5] ***Sw. Williamson Cnty. Cmty. Ass'n v. Saltsman***, 66 S.W.3d 872 (Tenn. Ct. App. 2001) (quoting ***Meighan v. U.S. Sprint Commc'ns Co.***, 924 S.W.2d 632, 639 (Tenn. 1996)).

"Subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it." ***Chapman***, 380 S.W.3d at 713 (citing ***Meighan***, 924 S.W.2d at 639; ***Standard Sur. & Cas. Co. v. Sloan***, 180 Tenn. 220, 173 S.W.2d 436, 440 (1943)). "A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from legislative acts." ***In re S.L.M.***, 207 S.W.3d 288, 295 (Tenn. Ct. App. 2006) (citing ***Meighan***, 924 S.W.2d at 639; ***Kane v. Kane***, 547 S.W.2d 559, 560 (Tenn. 1977)). Because subject matter jurisdiction "is the basis for the court's authority to act[,]" ***Meighan***, 924 S.W.2d at 639, it does not depend on the conduct or agreements of the parties and may not be conferred on a court by appearance, plea, consent, silence, or waiver. *See **In re S.L.M.***, 207 S.W.3d at 295 (citing ***State ex rel. Dep't of Soc. Servs. v. Wright***, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); ***Dishmon v. Shelby State Cmty. Coll.***, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). Orders and judgments entered by courts lacking subject matter jurisdiction are void. *See **id.*** ("Without subject matter jurisdiction, a court cannot enter a valid, enforceable order." (citations omitted)).

"Venue, on the other hand, is a concept based on privilege of and convenience to the parties." ***Meighan***, 924 S.W.2d at 639 (citation omitted). "It is generally not a condition precedent to the court's power, but relates instead to the appropriateness of the location of the action." ***Id.***; *see also **Hawkins***, 127 S.W.3d at 753 ("Venue refers to locality, and in the legal sense it signifies the proper locality in which a court of competent jurisdiction may adjudicate an action."). "Tennessee's venue rules are largely statutory and are intended to provide the criteria for determining where a lawsuit may or should be filed." ***Hawkins***, 127 S.W.3d at 753 (citing ***Metro. Dev. & Hous. Agency v. Brown Stove Works, Inc.***, 637 S.W.2d 876, 880 (Tenn. Ct. App. 1982)). As primarily a matter of convenience, venue generally may be waived. ***Meighan***, 924 S.W.2d at 639 (citing Tenn. R. Civ. P. 12.08).

For a matter to properly be before a specific court, the court must not only have subject matter jurisdiction—the authority to hear that particular type of action—but also be situated in the proper venue—a particular locality relevant to the action and the parties.[6] Here, the Storage Tank Act establishes "exclusive original jurisdiction of all review proceedings" instituted under its authority. Tenn. Code Ann. § 68-215-119(c). Meanwhile, the UAPA establishes the more expansive category of "venue for appeals of contested case hearings[.]" Tenn. Code Ann. § 4-5-322(b)(1)(A)(ii). In other words, the Storage Tank Act discusses *the single court* with the authority to adjudicate appeals from the Board's final

---

[5] *But see **Hawkins***, 127 S.W.3d at 753–54 (discussing the manner in which statutory localization renders venue "part of the court's authority to hear a particular action" in otherwise transitory actions, a consideration not relevant in this distinctly local action).

[6] Rather than tax the length of this Opinion, we will not address the import of personal jurisdiction.

orders, and the UAPA considers *the various counties* in which a court with the authority to do so may adjudicate appeals from an agency's final decision. No conflict exists between the meaning of these statutes. Nor does conflict necessarily result from the effect of the statutes. The Storage Tank Act makes clear that the Davidson County Chancery Court is the sole court with the authority to hear cases involving final orders of the Board. Davidson County is included among the localities included in the UAPA's venue provision. As such, by filing in the Davidson County Chancery Court, the Roberts could satisfy both statutes, as required to comply with section 4-5-103(b). Therefore, no inescapable conflict exists because "the various statutes can be reasonably construed so as to give effect to each[.]" ***State v. Hicks***, 55 S.W.3d 515, 523 (Tenn. 2001). Based on the plain meaning and effect of the language chosen by the General Assembly, the later-amended UAPA does not expressly contradict the Storage Tank Act, ***Hayes***, 288 S.W.3d at 339, and these provisions are able to be read cohesively.

This case, therefore, stands in contrast to the issue in ***Jamesway Construction, Inc. v. Salyers***, which involved a cost-recovery order assessed by TDEC against a construction company pursuant to the Water Quality Control Act ("the WQCA") that was subsequently appealed to the Board of Water Quality, Oil, and Gas. No. M2023-01704-COA-R3-CV, 2024 WL 4252809 (Tenn. Ct. App. Sept. 20, 2024).[7] In that case, the language of the UAPA and the WQCA directly addressed the same topic: the time for filing an appeal of the Board of Water Quality, Oil, and Gas's initial order. While the UAPA provided that the petition for appeal "shall be filed . . . within fifteen (15) days after entry of the initial order[,]" Tenn. Code Ann. § 4-5-315(b), the WQCA provided that the initial order "shall become final unless appealed . . . within thirty (30) days of entry of the initial order[.]" Tenn Code Ann. § 69-3-110(a). Thus, unlike the statutes at issue here, the UAPA and the WQCA implicated the same requirement and could not be read cohesively. The Court of Appeals was therefore required to determine which statute would control. Looking to the UAPA's provision that it controls in any conflict and multiple WQCA provisions deferring to the UAPA, the Court of Appeals concluded that the shorter time period set out in the UAPA applied. ***Jamesway Constr.***, 2024 WL 4252809 at *3–4. As no such unavoidable conflict exists here, we need not ignore the Storage Tank Act's unequivocal grant of exclusive jurisdiction to the Davidson County Chancery Court in favor of the UAPA's venue provisions.

In summary, the Roberts' position that the trial court had jurisdiction over this matter requires not only a contravention of our duty to "give effect to every word, phrase, clause and sentence" of the Storage Tank Act, ***City of Caryville***, 660 S.W.2d at 512, but a dereliction of our duty to, whenever possible, "provide a harmonious operation of the laws." ***Parkridge Hosp.***, 561 S.W.2d at 755. Yet, it is entirely possible to apply the plain meaning of the relevant sections of both the Storage Tank Act and the UAPA without rendering the Legislature's chosen language inoperative or superfluous or finding a conflict

---

[7] An application for permission to appeal to the Tennessee Supreme Court is pending in ***Jamesway Construction***. *See* M2023-01704-COA-SC-R11-CV.

that would result in a disfavored repeal by implication. ***Hayes***, 288 S.W.3d at 337. In this latter reading, the Storage Tank Act confers exclusive jurisdiction over proceedings pursuant to its authority while also deferring to the UAPA for procedural matters regarding those proceedings. Having found no reason to not apply this cohesive interpretation, we must conclude that the Davidson County Chancery Court is the sole court with subject matter jurisdiction over controversies brought thereunder. As a result, we further conclude that the Tipton County Chancery Court did not have the authority to hear this case. Its October 18, 2023 judgment, therefore, is void and must be vacated. *See **In re S.L.M.***, 207 S.W.3d at 295; ***Dishmon***, 15 S.W.3d at 480.

Yet, this conclusion does not leave the Roberts unable to obtain judicial review of the Board's final order. One of the very procedures set out in the UAPA adopted by the Storage Tank Act provides that where "a petition for judicial review is submitted within the sixty-day period but is filed with an inappropriate court, the case shall be transferred to the appropriate court." Tenn. Code Ann. § 4-5-322(b)(2); *see also* Tenn. Code Ann. § 16-1-116 (providing that when an action under the UAPA is filed in a court without jurisdiction, "the court shall, if it is in the interest of justice, transfer the action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed"). The parties agree that justice would be best served by the transferring of this matter to the proper court. Therefore, on remand, the trial court is directed to transfer this case to the Davidson County Chancery Court.

## IV. CONCLUSION

The judgment of the Tipton County Chancery Court is vacated, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellees Thomas Marlin Roberts and Angela Roberts, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 10 -