In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-350 CV


____________________



ROBERT EDWARD GILBREATH and 


CMC SCAFFOLDING CONTRACTORS, INC., Appellants



V.



JAMES H. HATHAWAY, JR., Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 00-10-06102-CV






OPINION


 James H. Hathaway, Jr. sued Robert Edward Gilbreath and CMC Scaffolding
Contractors, Inc. ("CMC") for personal injuries sustained in an automobile accident. The
trial court entered judgment on a jury verdict for the plaintiff, and the defendants appealed. 
Two issues are raised by Gilbreath and CMC. 

 In their first issue, the appellants contend that the trial court erred in refusing their
requested issue on unavoidable accident. "An unavoidable accident is 'an event not
proximately caused by the negligence of any party to it.'" Reinhart v. Young, 906 S.W.2d
471, 472 (Tex. 1995) (plurality opinion) (quoting Dallas Ry. & Terminal Co. v. Bailey,
151 Tex. 359, 250 S.W.2d 379, 385 (1952)). "The only purpose of the instruction is to
ensure that the jury will understand that 'they do not necessarily have to find that one or
the other parties to the suit was to blame for the occurrence complained of.'" Reinhart,
906 S.W.2d at 472 (quoting Yarborough v. Berner, 467 S.W.2d 188, 192 (Tex. 1971)). 
The Supreme Court has criticized the unavoidable accident instruction, but has not
disapproved of its use in cases involving environmental conditions. See Reinhart, 906
S.W.2d at 472; Hill v. Winn Dixie Texas, Inc., 849 S.W.2d 802, 803 (Tex. 1992). 

 Gilbreath was driving behind Hathaway in rush-hour traffic on a wet road. 
Hathaway stopped suddenly at a light, and Gilbreath's vehicle struck Hathaway's vehicle
from behind. Gilbreath testified that it was raining and that his vehicle slid when he
slammed on his brakes. Assuming that the appellant was entitled to an instruction on
unavoidable accident because the jury heard evidence that it had been raining earlier and
that Gilbreath lost traction when he applied the brakes, the trial court's refusal to include
the instruction in its charge is harmless because the broad form negligence question
presented to the jury in this case did not require the jury to make a negligence finding as
to one party or the other. See Otis Elevator Co. v. Shows, 822 S.W.2d 59, 61 (Tex.
App.--Houston [1st Dist.] 1991, writ denied); Tex. R. App. P. 44.1. The predicate to the
second jury question further alleviated any potential misunderstanding on the part of the
jury regarding the availability of the option of not finding either party to be negligent. The
trial court predicated the apportionment question upon an affirmative answer to both
parties on the general negligence question, and informed the jury that it should not answer
the question if it answered "No" to the first question or if it answered "Yes" to only one
party. Because the trial court's refusal to instruct the jury on unavoidable accident did not
cause the rendition of an improper judgment, issue one is overruled. 

 Issue two challenges the legal and factual sufficiency of the evidence supporting the
jury's finding of $65,000 for loss of earning capacity in the past. The general standards
of review for legal and factual sufficiency in a civil case are thoroughly discussed in Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965), and In re King's Estate, 150 Tex. 662, 244
S.W.2d 660, 661-62 (1951), respectively, and for the sake of brevity will not be restated
here. Lost earning capacity "concerns the impairment to one's ability to work." Koko
Motel, Inc. v. Mayo, 91 S.W.3d 41, 51 (Tex. App.--Amarillo 2002, pet. filed). The
non-exclusive factors to be considered include the earnings of the injured party before and
after the incident, his stamina and ability to work with pain and the weakness and
degenerative changes which naturally result from the injury and from long-suffered pain,
and the individual's potential or his ability for career advancement. Id. at 52. Hathaway
provided evidence that he earned between $33,000 and $38,000 each year from 1995
through 1997, but earned only about $13,000 in 1998 and $5,000 in 1999. His wage rate
was about $17 per hour, with time and a half for overtime and weekends. Hathaway
testified to the availability of plentiful overtime at his last employment. 

 Hathaway, who worked as an electrician for over thirty years, experienced on-the-job injuries in November 1996 and May 1998. On the date of the accident, October 19,
1998, Hathaway was off work while recovering from injury to his right elbow and from
surgery to his right wrist as treatment for carpal tunnel syndrome attributed to the May
1998 accidental injury. In connection with the wrist injury, Hathaway's doctor released
him to return to work in March 1999. After a third on-the-job injury, on May 10, 1999,
Hathaway was examined and released to regular duty work. On June 4, 1999, Hathaway 
had surgery to treat his right elbow. The doctor released Hathaway on January 6, 2000, 
but Hathaway did not return to work. 

 The appellants argue that, because Hathaway never returned to work after surgery
to treat a work-related injury, there is no evidence that Hathaway had a loss of earning
capacity as a direct result from his injuries in the automobile accident. We disagree with
their assessment of the record. Hathaway did not seek compensation for lost wages during
the time he was recuperating from hand and elbow surgery. He argued to the jury that he
should be compensated for his loss of earning capacity from January 2000 to April 2002,
a period of two years and three months. Performing his work required lifting fixtures
above his head, and carrying heavy objects. Hathaway testified that he went back to work
after the automobile accident, but "the work I was doing was hurting my back." 
According to his supervisor, Jerald Youngblood, after the accident Hathaway could not
handle ladders or fixtures, or lift or turn his head. Youngblood testified that Hathaway
returned to work after the car accident, and "tried to work, and he tried hard and I tried
to cut him all the slack I could, but he just couldn't do it." 

 Hathaway testified that within a day or two of the accident, he saw an orthopedic
surgeon for shooting, severe pain in his head and lower back, which he had never
experienced before. After therapy and treatment with pain medication Hathaway saw a
neurosurgeon in January 1999. He also saw a pain specialist who administered a series
of epidural steroid injections, a few weeks before his trial began. At the time of trial, he
was visiting the orthopedic surgeon at least once a month. Asked what problems he was
presently experiencing as a result of the accident, Hathaway testified, "Well, I can't look
up without hurting my neck and I can't carry anything and I can't lift - - lift anything; and
if I stand very long, sit very long, or lay down very long, my back hurts." 

 The appellee also submitted testimony from Dr. Joseph Walter, the orthopedic
surgeon who treated Hathaway for both carpal tunnel syndrome arising from an on-the-job
injury and for radiculopathy attributed to the accident. Dr. Walter reported successful
treatment of Hathaway's carpal tunnel syndrome. Dr. Walter testified that the back injury
was consistent with whiplash from an automobile accident. An MRI of the spine,
conducted in January 1999, revealed ruptured discs in the neck. The findings were
consistent with the symptoms exhibited by the patient. Dr. Walter testified that in his
opinion the automobile accident of October 18, 1998, caused the back conditions that he
diagnosed in Hathaway. Contrary to the appellants' argument, the appellee did connect
the injury sustained in the automobile accident to his subsequent inability to work. The
record includes evidence that, as a result of the accident, Hathaway suffered pain and
restriction of movement that substantially impaired his earning capacity. We conclude that
there is some evidence to support the jury's finding of loss of earning capacity in the past.

 The appellants contend that the evidence is factually insufficient to support the
jury's $65,000 award for loss of earning capacity sustained in the past. They base this
argument on the fact that Hathaway earned only $13,000 in 1998 and $5,000 in 1999.
Hathaway earned income in the mid-$30,000's in the years before the accident. For the
year of the accident and the year immediately following, he earned much less, then retired.
Hathaway acknowledged that during part of this period he was unable to work anyway due
to an on-the-job injury, and Gilbreath developed evidence that injuries unrelated to the
accident affected Hathaway's earning capacity for a substantial period of time after the
accident. Nonetheless, Hathaway offered credible evidence that he recovered from the
other injury by January 2000, and that he was still unable to work at all because of the
injury resulting from the accident with Gilbreath. We cannot conclude that the award was
manifestly unjust or against the great weight and preponderance of the evidence. Issue two
is overruled. The judgment is affirmed.

 AFFIRMED. 


 PER CURIAM



Submitted on April 1, 2003

Opinion Delivered April 24, 2003


Before McKeithen, C.J., Burgess and Gaultney, JJ.