IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 4, 2010 Session[1]

# JESSICA HOOPER McQUADE (now BURNETT)
## v.
# MICHAEL VINCENT McQUADE

**Appeal from the Chancery Court for Montgomery County**
**No. MC CH CV DI 05-439      Laurence M. McMillan, Chancellor**

**No. M2010-00069-COA-R3-CV - Filed November 30, 2010**

This is a divorce appeal involving subject matter jurisdiction. The parties, the parents of one minor child, resided in Tennessee when divorce proceedings were initiated in the Tennessee trial court. The trial court entered a *pendente lite* order designating the father as the child's primary residential parent and setting the mother's child support obligation. Before the trial, a special master made a recommendation on the mother's child support obligation. In May 2008, after a trial, the Tennessee trial court entered an order declaring the parties divorced and designating the father as primary residential parent, but did not rule on child support. By the time of the divorce order, both parties had moved to Kentucky. Almost immediately afterward, the mother filed an objection regarding the amount of her child support obligation, and the Tennessee trial court entered an order temporarily modifying her child support. In February 2009, the mother filed a petition to modify the designation of primary residential parent. The Tennessee trial court conducted a hearing on the mother's objection to the amount of child support and her petition to modify the designation of primary residential parent. It declined to change the designation of primary residential parent, and also held that the mother owed no back child support arrearage. Both parties appeal. We hold that, under the Uniform Child Custody Jurisdiction and Enforcement Act, the Tennessee trial court did not have subject matter jurisdiction to adjudicate the mother's petition to change the designation of primary residential parent. We also hold that, under the Uniform Interstate Family Support Act, the trial court did not have subject matter jurisdiction to adjudicate the

[1]At oral argument in this case, this Court, *sua sponte*, raised the issue of the trial court's subject matter jurisdiction. The parties were asked to submit briefs on the issue, and the Court considered the appeal after the supplemental briefs were filed.

mother's request for modification of child support. Therefore, we vacate the trial court's orders modifying the parenting plan and modifying child support.

### Tenn. R. App. P. 3 Appeal of Right; Judgment of the Chancery Court is Vacated in Part and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the Defendant/Appellant, Jessica Hopper McQuade (Burnett)[2]

John T. Maher, Clarksville, Tennessee, for Plaintiff/Appellee, Michael Vincent McQuade[3]

### OPINION

### FACTS AND PROCEEDINGS BELOW

Defendant/Appellant Jessica Hooper McQuade (now Burnett) ("Mother") and Plaintiff/Appellee Michael Vincent McQuade ("Father") were married on February 28, 2003. The parties had one son during this marriage, born on April 24, 2004. During the marriage, the family lived in Clarksville, Montgomery County, Tennessee.

On July 28, 2005, Father filed for divorce in the Chancery County of Montgomery County, Tennessee ("trial court"). In October 2005, the trial court entered an order designating Father as the son's primary residential parent, and ordering Mother to pay child support *pendente lite* in the amount of $408 per month. Subsequently, the trial court appointed a special master to make a recommendation to the trial court on the parties' child support obligations. After a hearing in 2008, the special master calculated Mother's child support obligation to be $460 per month. On May 16, 2008, the trial court entered an order declaring the parties divorced, designating Father as the primary residential parent, and detailing the parties' residential parenting time. Child support was not addressed.

Meanwhile, prior to entry of the order of May 16, 2008, both parties moved to Kentucky. Mother began working as a firefighter for the City of Hopkinsville, Kentucky in November

---

[2]Mother was represented by different counsel in the trial court proceedings.

[3]Father was represented by different counsel in the trial court proceedings.

2006. By February 2008, Father had moved to Kentucky as well; he worked as a Fire Support Specialist in the military, and was stationed at Fort Campbell, Kentucky.

Shortly after entry of the divorce order, on May 19, 2008, in response to proceedings to garnish her wages, Mother filed an objection to the report of the special master and a request to submit additional evidence regarding the amount of child support she would have to pay. Mother claimed that the special master's calculation of child support was based on an inaccurate assessment of her gross income. The trial court entered an order on June 9, 2008, halting the garnishment of Mother's wages, and ordering Mother to pay $354 per month in child support, pending its review of her objection to the special master's calculation.

In the meantime, the trial court considered other matters between the parties, such as Mother's request for permission to take the parties' son to Austria to visit Mother's terminally ill mother.

On February 17, 2009, Mother filed a petition to modify the parenting plan, and to designate Mother as the primary residential parent. In this petition, Mother asserted, *inter alia*, that Father interfered with her telephone visitation with the parties' son.

Father filed a Rule 12.02 motion to dismiss Mother's petition to modify the parenting plan, based on lack of subject matter jurisdiction, in personam jurisdiction, and improper venue. In support of his motion, Father filed an affidavit stating that all parties, including the child, had lived in Kentucky for over a year before the filing of Mother's modification petition, *i.e.*, at least since February 17, 2008.

In response to Father's motion to dismiss her petition to modify, Mother did not dispute Father's assertion that both parties had moved to Kentucky. However, she argued that Father's motion to dismiss should be denied because the original divorce action remained pending in the trial court, in that her objection to the special master's calculation of her child support obligation had not been resolved. The trial court held a hearing on May 8, 2009, regarding Father's Rule 12.02 motion to dismiss. The appellate record does not include a transcript of that hearing. On May 12, 2009, the trial court entered an order summarily denying Father's Rule 12.02 motion.

After that, the trial court heard several motions filed by Mother. The motions related to Father's plan to move from Kentucky to Cleveland, Tennessee, Mother's allegation that Father taped her telephone conversations with their son, and Mother's discovery request for such audiotapes.

On September 9, 2009, the trial court conducted a hearing on several outstanding issues. These included the objection to the special master's report that Mother filed shortly after the entry of the divorce order, Mother's objection to Father's anticipated relocation, and Mother's petition to modify the parenting plan to designate her as primary residential parent. At this hearing, the trial court heard testimony from both parties, a psychiatrist, and Father's brother.

In his testimony, Father said that he and the parties' son lived in Trigg County, Kentucky, where the son attended school. Father testified at length about difficulties with Mother regarding her residential parenting time with their son, and the reasons why he should remain the primary residential parent.

Mother testified that she and her new husband lived in Christian County, Kentucky, approximately twenty-five miles from Father's residence. As to her objections to the special master's calculations on child support, Mother testified that the special master had inadvertently doubled her salary from the Hopkinsville Fire Department,[4] and so based the calculation of her child support obligation on an erroneous income figure. She asked the trial court to modify her child support obligation, to base the amount on the correct income figures.

The trial court also heard testimony from a psychiatrist who had seen the parties' son at Mother's request. The psychiatrist's testimony supported Mother's criticism of Father's parenting, and supported her request to be designated as the primary residential parent. Father's brother testified that the child seemed happy living with Father. At the conclusion of the testimony, the trial court took the matter under advisement.

On September 18, 2009, the trial court issued its order on the matters considered at the September 9, 2009 hearing. At the outset of the order, the trial court acknowledged that "both the Mother and the Father have relocated to the state of Kentucky," but stated that it denied Father's earlier motion to dismiss "because of the history of litigation between these parties and the particular knowledge of this case by this court." The trial court found that, despite the parties' earlier move out of state, Mother's petition to modify the parenting plan was filed when the Tennessee trial court maintained exclusive jurisdiction to modify the parenting order. On the substantive issues, the trial court found that Father's proposed relocation from Kentucky to Cleveland, Tennessee did not have a reasonable purpose. On Mother's petition to modify the parenting plan and designate her as the primary residential

---

[4]Mother testified that she received $1048 every two weeks in her employment. Mother asserted that the special master premised Mother's child support on an income of approximately $4500 per month, roughly double her actual income.

parent, the trial court was persuaded by the testimony of the child's psychiatrist that Father pressured the child and limited the Mother's time with the child. On this basis the trial court concluded that a material change in circumstances had occurred since the time of the previous custody order. Despite this finding, the trial court concluded that Father should remain the primary residential parent. However, the trial court increased Mother's residential parenting time with the child. Finally, on Mother's long-pending objection to the amount of child support, the trial court concluded that the special master had erroneously calculated Mother's income, and ordered the parties to recalculate Mother's child support obligation.

On October 15, 2009, Mother filed a motion to alter or amend the trial court's September 18, 2009 order, objecting to the trial court's ruling on her request to be designated as the child's primary residential parent. In response, Father argued that Mother's motion should be denied, and also renewed his motion to dismiss. Father argued that the court "should either dismiss the entire matter upon reconsideration based on lack of jurisdiction or defer to the Commonwealth of Kentucky where the parties and the child have now resided for many years." On December 4, 2009, the trial court denied Mother's motion to alter or amend; however, at the same time, the trial court found that Mother did not owe any back child support. The trial court also adopted the parenting plan proposed by Mother in the wake of the September 18, 2009 order, which retained Father as the primary residential parent but increased Mother's residential parenting time. The trial court did not grant Father's request to reconsider his motion to dismiss and defer to the Commonwealth of Kentucky. Mother filed a notice of appeal on December 31, 2009.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother argues that the trial court erred in declining to modify the parenting plan to designate her as the primary residential parent. She agrees with the trial court's finding of a material change in circumstances, but argues that the circumstances warrant a change in the designation of primary residential parent. Father argues that the trial court erred in finding a material change in circumstances, and in determining Mother did not owe a child support arrearage.

At oral argument in this case, this Court *sua sponte* raised the issue of the trial court's subject matter jurisdiction, because it was undisputed that, by the time the order of divorce was entered, both parties and the child had moved to Kentucky. Counsel for the parties were directed to file supplemental briefs on this issue. In the supplemental briefs, Mother argued that the trial court retained continuing jurisdiction over the entire case. Father argued that the trial court did not have jurisdiction over Mother's petition to modify the designation of primary residential parent under the Uniform Child Custody Jurisdiction and Enforcement Act, Tennessee Code Annotated §§ 36-6-201 *et seq.*

Whether a court has jurisdiction is a question of law, and thus, on appeal, the issue is reviewed *de novo* with no presumption of the correctness of the ruling of the lower court. ***Button v. Waite***, 208 S.W.3d 366, 369 (Tenn. 2006).

As to the substantive issues raised on appeal, the trial court's factual findings are reviewed on appeal with a presumption of correctness, unless the evidence preponderates against the findings. *See* TENN. R. APP. P. 13(d). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. ***See Bowden v. Ward***, 275 S.W.3d 913, 916 (Tenn. 2000).

## ANALYSIS

### *Subject Matter Jurisdiction*

Subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy. ***Osborn v. Marr***, 127 S.W.3d 737, 739 (Tenn. 2004). In the absence of subject matter jurisdiction, a court cannot enter a valid, enforceable order. ***Brown v. Brown***, 281 S.W.2d 492, 497 (Tenn. 1955). Therefore, subject matter jurisdiction may be raised at any time by the parties or by the appellate court, *sua sponte* on appeal. ***County of Shelby v. City of Memphis***, 365 S.W.2d 291 (Tenn. 1963); ***Graham v. Graham***, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. Jan. 26, 2009). Accordingly, when subject matter jurisdiction is questioned, the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the Tennessee General Assembly, or the common law have conferred on it the power to adjudicate the case before it. ***Staats v. McKinnon***, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006).

To address the subject matter jurisdiction of the trial court to adjudicate the issues in this case, we must briefly review the procedural status of the case. Father's original complaint for divorce was filed in the trial court below in 2005. At the time, both parties lived in Montgomery County, Tennessee. On October 10, 2005, within a few months after the divorce complaint was filed, the trial court entered a *pendente lite* order, designating Father as the primary residential parent and setting Mother's *pendente lite* child support obligation at $408 per month. Father was a member of the military and in 2006, he was stationed in Iraq. During that time, temporary custody of the parties' son was granted to Father's family members and Mother was granted supervised visitation.[5]

---

[5]The record indicates that Mother was absent from the family for some four years. The nature of her absence is not explained in the record.

Subsequently, the trial court entered an order of reference, ordering the special master to hear all matters related to child support and calculate child support. The special master conducted a hearing on March 26, 2008. By that time, Father was no longer stationed in Iraq and the child was living with him. The special master recommended that Mother pay child support in the amount of $460 per month, beginning in March 2008.

The trial court's order of May 16, 2008 declared the parties divorced and included extensive parenting provisions. However, it did not address child support or the special master's recommendation. Thus, the May 16, 2008 order was not a final, appealable order. *See* Tenn. R. App. P. 3(a) ("Any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a final judgment adjudicating all the claims, rights and liabilities of all parties.").

By the May 16, 2008 order, the parties had already moved to Kentucky. The order obliquely refers to this fact by designating a location in Kentucky as the place for the parties' exchange of the child for purposes of the residential parenting schedule.

Shortly after entry of the May 16, 2008 order, Mother filed her objection to the special master's child support calculation. On June 9, 2008, the trial court entered an order requiring Mother pay to Father "$354.00 as temporary child support per month pending a review and the decision of [Mother's] appeal of . . . [the] Special Master's Report dated May 7, 2008." Thus, in the June 9, 2008 order, the trial court entered only a temporary order on child support. Consequently, there was still no final, appealable order at that point.

In the September 18, 2009 order, the trial court resolved Father's request to relocate with the child and Mother's petition to change the designation of primary residential parent. As to child support, although the trial court concluded that the special master had erred in her calculation of Mother's income and made a finding on the amount of Mother's income, it ordered the parties to recalculate the child support, and put the recalculated amount in a proposed parenting plan. Thus, the issue of child support was not yet resolved, and the September 18, 2009 order was not a final, appealable order.

Finally, on December 4, 2009, the trial court entered an order and a permanent parenting plan. The order designated Father as the primary residential parent and increased Mother's residential parenting time. Mother's child support obligation was set at $175 per month, and

she was found to owe no arrearage.  This was a final, appealable order.  By this time, both parties and the child had been living in Kentucky for well over a year.[6]

### *Jurisdiction as to Modification of Primary Residential Parent Designation and Parenting Schedule*

Where the parties and the child at issue all live outside Tennessee, and a Tennessee trial court adjudicates the custody of the child, Tennessee's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), §§ 36-6-201 *et seq.*, is implicated.  "The provisions of the UCCJEA . . . address the issue of subject matter jurisdiction."  JANET L. RICHARDS, 155 *Richards on Family Law* § 7-3(b) (2d ed. 2004).  The UCCJEA governs initial child custody determinations as well as proceedings to modify custody.  It details the circumstances under which a Tennessee trial court has jurisdiction to make an initial custody determination.  T.C.A.§ 36-6-216 (2005).  It also sets forth the circumstances under which a Tennessee trial court that has already made a child custody determination has jurisdiction to modify that determination.  T.C.A. § 36-6-217 (2005).

In the case at bar, after the trial court entered its May 2008 order designating Father as the primary residential parent, Mother filed a petition to modify.  The petition referred to the May 2006 order as a "final decree," and asserted that there had "been a substantial and material adverse change in circumstances" that warranted modifying to designate Mother as the primary residential parent.  The trial court in fact found a material change in circumstances, a finding that would be necessary if there had been a final, appealable order in the case. ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002); ***Blair v. Badenhope***, 77 S.W.3d 137, 148 (Tenn. 2002).  It nevertheless declined to change the designation of primary residential parent.

However, despite the way the parties, and perhaps the trial court, treated the May 2008 order, at the time Mother filed her petition to modify, no final, appealable order had been entered. The trial court's orders, therefore, remained "subject to revision at any time."  TENN. R. APP. P. 3(a).  Under these circumstances, for purposes of the UCCJEA, was the trial court's December  4, 2009 order an "initial" child custody determination or a "modification"?

To answer this question, we look at the definitions in the UCCJEA.  Section 36-6-605 defines "child custody determination" as follows:

> "Child custody determination" means a judgment, decree, or other order of a court providing  for  the  legal  custody,  physical  custody,  or  visitation  with

---

[6]The record does not indicate the exact date on which each party moved to Kentucky.

respect to a child. "Child custody determination" includes a permanent temporary, initial, and modification order.

T.C.A. § 36-6-205(3) (2005). The term "initial determination" is defined as "the first custody determination concerning a particular child." T.C.A. § 36-6-205(8) (2005). The term "modification" is defined as well:

"Modification" means a child custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child.

T.C.A. § 36-6-205(11) (2005). Thus, for purposes of the UCCJEA, the trial court's October 2005 designation of Father as the primary residential parent was the "initial" child custody determination, regardless of whether it was a final, appealable order. Both the May 16, 2008 and the December 4, 2009 orders would be considered modifications of the initial custody order entered in October 2005.

Under T.C.A. § 36-6-217(a), if a Tennessee court has properly made an initial determination of custody,[7] that Tennessee court has exclusive, continuing jurisdiction to modify its determination until the occurrence of one of the following events:

(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

---

[7]It is undisputed that the parties lived in Tennessee when the original divorce complaint was filed, and that Tennessee was the "home state" of the parties' son at the time. *See* T.C.A. § 36-6-205(7) (2005) (definition of "home state"). The record indicates that in October 2005, both parties still lived in Tennessee, and it does not indicate when the parties, and the parties' son, moved from Tennessee to Kentucky. We find that there is not sufficient basis in this record to find that the trial court did not have jurisdiction under the UCCJEA to modify the October 2005 custody determination in its May 16, 2008 order. *See* T.C.A. § 36-6-211(a) (2005).

T.C.A. § 36-6-217(a)(1)-(2) (2005).  Thus, if either of these events occurs, the Tennessee court loses its exclusive, continuing jurisdiction.[8]

With respect to subsection (1) of T.C.A. § 36-6-217(a), the trial court did not make a finding that neither the parties nor the child had a significant connection to Tennessee, even though the facts would likely have supported such a finding.  Thus, the trial court did not lose its exclusive continuing jurisdiction pursuant to subsection (1).

However, under subsection (2) of T.C.A. § 36-6-217(a), the trial court below determined in its September 18, 2009 order that the parents and the child  no longer resided in Tennessee.  In that order, the trial court stated that "both the Mother and the Father have relocated to the state of Kentucky," and that the parties' son resided with Father.[9]  Nevertheless, after noting that neither of the parents lived in Tennessee, the trial court went on to state that "Mother's Petition for Modification of the Parenting Plan was filed when the court maintained exclusive jurisdiction to modify its order."  This was apparently restating the trial court's conclusion on May 12, 2009, when it issued an order denying Father's motion to dismiss Mother's modification petition; Father had asserted, *inter alia*, that the trial court lacked subject matter jurisdiction.[10]

---

[8]This Court has stated:

> The UCCJEA establishes a clear jurisdictional hierarchy to decide which court will have power to decide child custody and visitation cases.  " . . . [A]t the top of the hierarchy is a court with exclusive continuing jurisdiction.  If a court has entered a valid custody order . . . and if the parties or the child continues to live in the state, that court has the exclusive right to decide if the order should be . . . modified . . ., called "a right of first refusal."
> **Cliburn v. Bergeron**, No. M2002-01386-COA-R3-CV, 2002 WL 31890868, at *8 (Tenn. Ct. App. Dec. 31, 2002) (quoting MATTHEW BENDER & CO., INC., *Modern Child Custody Practice* § 3-109-12 (2000)).

[9]In its May 16, 2008 order, the trial court alluded indirectly to the fact that the parties and their son had moved to Kentucky, by establishing a visitation exchange place in Kentucky and referring to the child's school in Trigg County, Kentucky.  This did not, however, amount to a "determination" that the parents and the child were no longer residing in Tennessee.

[10]We note that the language of  T.C.A. § 36-6-217(a)(2) could be interpreted as indicating that the date of the *filing* of the modification petition is not determinative, that is, that the trial court may lose jurisdiction over the child-custody determination when the court determines that neither the child nor the parents reside in Tennessee, even if that occurs after the modification petition was filed.  The advisory comments to the statute in fact state that "[c]ontinuing jurisdiction is lost when the child, [and] the child's parents, . . . no longer reside in the original decree state." T.C.A. § 36-6-217, cmt. 2 (2005).  However, the same advisory comment goes on to state: "Jurisdiction attaches at the commencement of a proceeding.  If state A had

(continued...)

-10-

This Court considered a somewhat similar situation in *Arendale v. Arendale*, No. W2005-02755-COA-R3-CV, 2008 WL 481943 (Tenn. Ct. App. Feb. 22, 2008) (*perm. app. dismissed* May 19, 2008). In *Arendale*, the mother was designated the primary residential parent by the Tennessee court that granted the parties' divorce in 2001. In 2004, the father filed a petition with the Tennessee trial court seeking a modification to designate him as the primary residential parent; the Tennessee court granted his petition. *Id.* at \*1.

Afterward, the mother filed a motion asserting that the Tennessee trial court did not have subject matter jurisdiction because the parties had moved to Mississippi prior to the filing of the father's petition to change custody. *Id.* The trial court denied the mother's motion, finding that she resided in Tennessee. The mother appealed. *Id.* The appellate court found that the subject matter jurisdiction of the Tennessee trial court to hear the father's petition to change custody was governed by T.C.A. § 36-6-217. *Id.* at \*2. Under Section 36-6-217(a)(2), the appellate court reviewed the trial court's factual finding that the mother continued to reside in Tennessee, and concluded:

> We think the preponderance of the evidence clearly shows that both parties and the child had been residents of Mississippi since the mother and child moved in November of 2002. The father moved to Mississippi a year before that. There is no proof that any of them have lived in Tennessee since that time. The trial court, therefore, did not have the power to modify its prior custody order.

*Id.* at \*4. Thus, because both the parents and the child had moved from Tennessee before the father filed his petition for a change of custody, the *Arendale* court found, under Section 36-6-217(a)(2), that the trial court did not have subject matter jurisdiction to adjudicate the father's petition.

In the case at bar, the trial court's May 12, 2009 order on Father's motion to dismiss does not contain an express finding as to whether the parties and the child were residing in Tennessee; the order "simply concludes, without explanation, that the court has . . . subject-matter jurisdiction." *Jordan v. Jordan*, No. W2002-00054-COA-R3-CV, 2003 WL 1092877, at \*6 (Tenn. Ct. App. Feb. 29, 2003). Thus, there is no factual finding by the trial court to which we may attach the presumption of correctness. TENN. R. APP. P. 13(d). Consequently, we

---

[10](...continued)

jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the state prior to the conclusion of a proceeding." *Id. But see Button v. Waite*, 208 S.W.3d 366, 372 n.6 (Tenn. 2006). In this case, we will look at the parties' residency when Mother's modification petition was filed.

must review the record to determine where the preponderance of the evidence lies. ***Id.*** (citations omitted).

The record shows that Mother filed her petition to modify the parenting plan on February 17, 2009. On May 5, 2009, Father filed his own affidavit in support of his Rule 12.02 motion to dismiss, stating that both parties had resided in Kentucky since at least one year prior to February 17, 2009. Mother did not dispute the assertion in Father's affidavit. In fact, all of the documents submitted by Mother for the special master's March 2008 hearing on child support show Mother's home and work addresses to be in Kentucky. We find nothing in the record indicating that either of the parents, or the child, were residing in Tennessee when Mother's petition to modify the parenting plan was filed. Therefore, we must respectfully disagree with the trial court's conclusion that it had exclusive, continuing jurisdiction to adjudicate Mother's modification petition, under T.C.A. § 36-6-217(a)(2).

Nevertheless, T.C.A. § 36-6-217(b) provides that a Tennessee court which has "made a child-custody determination and does not have exclusive, continuing jurisdiction under this section, may modify that determination *only if it has jurisdiction to make an initial determination under section 36-6-216.*" T.C.A. § 36-6-217(b) (2005) (emphasis added). Therefore, even in the absence of exclusive continuing jurisdiction, under Section 36-6-217(a), the trial court below could modify its prior custody determination if it had jurisdiction to make an initial custody determination. Therefore, we must look to the UCCJEA provisions on jurisdiction to make an initial child custody determination.

T.C.A. § 36-6-217(a) governs initial child-custody determinations; it prioritizes the bases for the exercise of subject matter jurisdiction in such proceedings. ***In re S.L.M.***, 207 S.W.3d 288, 298 (Tenn. Ct. App. 2006).[11] A court with "home state" jurisdiction as defined in T.C.A. § 36-6-216(a)(1) has first priority, followed by courts with "significant connection/substantial evidence" jurisdiction as defined in T.C.A. § 36-6-216(a)(2), courts with "convenient forum" jurisdiction as defined in T.C.A. § 36-6-216(a)(3), and courts with "vacuum" jurisdiction as defined in T.C.A. § 36-6-216(a)(4). ***Id.*** We address each basis in turn.

---

[11] ***See also Cliburn***, 2002 WL 31890868, at *8 ("The order of preferred jurisdiction bases is: (1) continuing jurisdiction; (2) home state jurisdiction; (3) significant connection jurisdiction; (4) and jurisdiction when no other jurisdictional basis is available.") (quoting MATTHEW BENDER & CO., INC., *Modern Child Custody Practice* § 3-109-12 (2000)).

Section 36-6-214(a)(1) states:

> Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if [Tennessee] is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

T.C.A. § 36-6-216(a)(1) (2005). "Home state" is defined as "the state in which a child lived with a parent . . . for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." T.C.A. § 36-6-205(7) (2005). In this case, the date on which Mother filed her modification petition , *i.e.*, February 17, 2009, is "the date of the commencement of the proceedings." ***Button v. Waite***, 108 S.W.3d 366, 371 (Tenn. 2006). As set forth above, the record shows clearly that all parties moved to Kentucky at least one year prior to February 17, 2009. Therefore, Kentucky, not Tennessee, was the child's home state as of the date on which Mother filed her petition, and the trial court did not have jurisdiction under Sections 36-6-217(b) and 36-6-216(a)(1).

Under Section 36-6-216(a)(2), a Tennessee trial court without home state jurisdiction may nevertheless make an initial custody determination if:

> A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:
>
> > (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> > (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

T.C.A. § 36-6-216(a)((2) (2005). Here, no Kentucky court had declined to exercise jurisdiction on the ground that Tennessee is the more appropriate forum. While the Tennessee trial court below appeared to make a determination that Tennessee would be the most appropriate forum to adjudicate Mother's petition in its September 18, 2009 order, it is up to the *home state* court, here, Kentucky, to determine that it is an inconvenient forum and decline jurisdiction for itself. ***See Stanford v. Sylvain***, No. M2006-01782-COA-R3-JV,

-13-

2007WL 1062080, at *6 (Tenn. Ct. App. Apr. 5, 2007) (stating that only the state with the superior jurisdictional basis is entitled to exercise jurisdiction, unless *that* state declines to exercise jurisdiction.)[12] (emphasis added). Therefore, the Tennessee trial court did not have jurisdiction pursuant to Sections 36-6-217(b) and 36-6-216(a)(2).

The only other bases for jurisdiction are in Sections 36-6-216(a)(3) and (4). Neither subsection is applicable to the facts in this case.[13]

Thus, under Section 36-6-216, at the time Mother filed her petition to modify the parenting plan, the trial court did not have jurisdiction to make an initial custody determination. Consequently, under Section 36-6-217(b), the trial court below did not have jurisdiction to adjudicate Mother's modification petition.

Accordingly, we must vacate the trial court orders dated September 18, 2009 and December 4, 2009 insofar as they purport to modify the parenting plan as set forth in the order dated May 16, 2008.

### *Jurisdiction as to Child Support*

The correlative to the UCCJEA is the Uniform Interstate Family Support Act ("UIFSA"), which governs interstate jurisdiction questions involving child support. *See* T.C.A. §§ 36-5-201 *et seq.*; *Highfill v. Moody*, No. W2009-01715-COA-R3-CV, 2010 WL 2075698, at *6 (Tenn. Ct. App. May 25, 2010) (quoting *In re J.B.W.*, No. M2007-02541-COA-R9-CV, 2007 WL 4562885, at *1 (Tenn. Ct. App. Dec. 27, 2007)); *Young v. Godfrey*, No. M2007-02308-COA-R3-CV, 2008 WL 5330487, at *3 (Tenn. Ct. App. Dec. 19, 2006). The two uniform acts are consistent in many, but not all, respects, and so jurisdiction over child support must be analyzed separately from jurisdiction over custody and visitation issues. *Highfill*, 2010 WL 2075698, at *6-7.

The UIFSA defines "child support order" as "a support order for a child," and does not restrict the term to final appealable orders. T.C.A. § 36-5-2101(2) (2002). A "support order"

---

[12]We note that the record does not indicate a significant connection to Tennessee or substantial evidence in Tennessee. At the September 9, 2009 hearing, there were no witnesses from Tennessee nor other evidence from Tennessee.

[13]Section 36-6-216(a)(3) states that "All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under §§ 36-6-221 or 36-6-222." T.C.A. § 36-6-216(a)(3) (2005). Section 36-6-216(a)(4) states that "No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3)." T.C.A. § 36-6-216(a)(4) (2005).

is defined as "a judgment, decree, or order, whether temporary, final, or subject to modification, for the benefit of a child." T.C.A. § 36-5-2101(2) (2005).

Similar to the UCCJEA, the UIFSA defines "home state" as "the state in which a child lived with a parent . . . for at least six (6) consecutive months immediately preceding the time of filing of a petition or comparable pleading for support." The "issuing state" is the state in which a court issues a support order, and the "issuing tribunal" is the court that issues the support order. T.C.A. § 36-5-2101(9), (10) (2005).

As with the UCCJEA, the UIFSA sets forth the parameters for a Tennessee court's "continuing, exclusive jurisdiction" over a child support order. Section 36-5-2205 provides:

> (a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child-support order:
> > (1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
> > (2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

T.C.A. § 36-5-2205(a)(1) and (2) (2005). The comments to this section of the UIFSA are instructive:

> This section is perhaps the most crucial provision in UIFSA. . . . [T]he issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing State, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order – which in practical terms means that it may modify its order.

T.C.A. § 36-5-2205, cmt. (2005). Thus, the issuing tribunal retains exclusive jurisdiction to modify its order unless the narrowly defined exceptions apply. The official comments also draw the negative inference from the statutory language, to define when the issuing court loses its continuing, exclusive jurisdiction to modify its child support order:

> The other side of the coin follows logically. Just as subsection (a)(1) defines the retention of continuing, exclusive jurisdiction, by clear implication the

subsection also defines how jurisdiction to modify may be lost. That is, if all the relevant persons – the obligor, the individual obligee, and the child – have permanently left the issuing State, the issuing State no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that state have no reason to expend public funds on the process.

*Id.* Thus, the comments state that if all of the relevant persons, that is, the parents and the child, have moved away from the issuing state, the issuing court loses jurisdiction to modify its child support order. The comments note, however, that the initial child support order of the issuing tribunal remains valid and enforceable. *Id.*

Section 36-5-2205 of the UIFSA was applied by the Tennessee Supreme Court in *LeTellier v. LeTellier*, 40 S.W.3d 490 (Tenn. 2001). In *LeTellier*, the Court was presented with the issue of whether a Tennessee court could modify a child support order issued by the District of Columbia; the mother and child had moved to Tennessee, and the father had moved to Virginia. *Id.* at 492. The *LeTellier* Court stated specifically that it gave "substantial deference" to the official comments to the UIFSA. *Id.* at 493, n.2. It found, under Section 36-5-2205(a)(1), that "the District of Columbia lost continuing, exclusive jurisdiction" when the father, mother, and child were no longer D.C. residents, noting that D.C. no longer had "an appropriate nexus with the parties or the child to justify exercise of jurisdiction to modify." *Id.* at 493 (quoting T.C.A. § 36-5-2205, cmt.).

The parties have cited no Tennessee case in which a Tennessee court, as the issuing court, was asked to modify its own order after the parents and the child had moved out of Tennessee, and we have found none. The courts of other states have addressed this situation, and virtually all have concluded that, once the parents and their minor children have left the issuing state, that state no longer has jurisdiction to modify its order. *See, e.g., In Matter of Myers*, 56 P.3d 1286, 1290-91 (Kan. Ct. App. 2002) (citing *Jurado v. Brasher*, 782 So.2d 575, 580 (La. 2001); *Cohen v. Powers*, 43 P.3d 1150 (Or. App. 2002); *In re: B.O.G.*, 48 S.W.3d 312 (Tex. Civ. App. 2001)); *Gibson v. Gibson*, 211 S.W.3d 601, 608-09 (Ky. Ct. App. 2006). *But see Karimi v. Karimi*, 1998 WL 323412, at *6 (Va. Ct. App. June 16, 1998).

We are persuaded by these authorities that, in this case, the Montgomery County trial court lost the jurisdiction to modify its child support order once Mother, Father, and their son permanently moved from Tennessee. At that point, the Montgomery County trial court no longer had "an appropriate nexus with the parties or the child to justify exercise of jurisdiction to modify." *LeTellier*, 40 S.W.3d at 493 (quoting T.C.A. § 36-5-2205, cmt.).

Thus, the trial court below was without jurisdiction to modify its prior child support order at the time that it entered its order dated June 9, 2008, in that the record shows clearly that Mother, Father, and their son had moved to Kentucky by that date.[14] It follows that the trial court below was also without jurisdiction to modify child support when it entered the order dated December 4, 2009. Therefore, we are left with little choice but to vacate those orders insofar as they purport to modify Mother's child support obligation. This leaves in force only the trial court's order of *pendente lite* child support, entered on October 10, 2005, while the parties were still residing in Tennessee.

## CONCLUSION

Accordingly, we find that the trial court was without subject matter jurisdiction to modify the child custody and visitation provisions in its order dated May 16, 2008, and vacate the September 18, 2009 and December 4, 2009 orders insofar as they modify the parenting provisions in the May 16, 2008 order. We find as well that the trial court was without subject matter jurisdiction to modify its child support order dated October 10, 2005, and vacate the June 9, 2008, September 18, 2009, and December 4, 2009 orders insofar as they modify the October 10, 2005 child support order.

This holding pretermits the issues raised by the parties on appeal.

The judgment of the trial court is vacated in part as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed against Appellant Jessica Hooper McQuade (Burnett), and her surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[14]We find no provision in the UIFSA similar to T.C.A. § 36-6-217(b), in the UCCJEA, discussed above in the analysis of jurisdiction as to custody.