IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 6, 2025 Session

**DYLAN WHITMORE v. MELYSSA ATKINSON**

**Appeal from the Juvenile Court for Tipton County**
No. 20-JV-103      William A. Peeler, Judge
_____

**No. W2024-01265-COA-R3-JV**
_____

This is an action to modify a permanent parenting plan. Mother appeals the trial court's order finding her in civil contempt, modifying the parties' parenting plan, and awarding attorney's fees to Father. She also argues that the trial court lacked subject matter jurisdiction over Father's initial petition to establish a parenting plan. We have determined that the trial court properly exercised subject matter jurisdiction over this matter. We affirm the trial court's finding that Mother's failure to abide by the parenting plan constituted a material change of circumstance. However, Father failed to carry his burden of proof to demonstrate that modification of the 2021 parenting plan to designate Father as primary residential parent is in the child's best interest. We therefore reverse the trial court's judgment granting Father's petition to modify. We affirm the trial court's award of attorney's fees to Father and remand for recalculation of the parties' child support obligations. Father's request for attorney's fees on appeal is denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Reversed in Part, and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and KENNY ARMSTRONG, J., joined.

Darrell D. Blanton, Memphis, Tennessee, for the appellant, Melyssa Atkinson.

Adam N. Cohen, Memphis, Tennessee, for the appellee, Dylan Whitmore.

# MEMORANDUM OPINION[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

Melyssa Atkinson ("Mother") and Dylan W. ("Father,") are the unmarried parents of R.G.W. ("the child"), who was born in August 2019.[2] On June 2, 2020, the State of Tennessee filed a petition on Mother's behalf to set Father's child support obligation and for retroactive child support. The petition stated that Mother was receiving Title IV-D services and that Mother and the child resided in Tipton County, Tennessee.

On April 6, 2021, Father filed a petition in the Juvenile Court of Tipton County ("the trial court") to establish a parenting plan. In his petition, Father alleged that Respondent, Melyssa A. ("Mother") was a resident of Tipton County and that the child had resided with Mother since the child's birth in 2019. Father proposed that Mother be designated primary residential parent and sought equal parenting time on an alternate week schedule, joint decision-making, and an order setting his child support obligation consistent with the Child Support Guidelines. On May 18, 2021, Father moved for a default judgment on the ground that Mother had failed to file an answer. Following a June 2 hearing, the trial court granted Father's motion for default judgment, adopted Father's proposed parenting plan, and ordered Father to pay child support in the amount of $128.00 per month. In its order, the trial court found that Mother was served on April 13 in Millington via private process server, had failed to respond, and had failed to appear. On August 4, the trial court dismissed the State's petition to set child support.

On October 21, 2021, the State of Tennessee filed a petition for civil contempt on Mother's behalf. The petition asserted that Father had failed to pay child support as required by the June 2021 parenting plan and stated that Mother was receiving Title IV-D services because she "participates in or has participated in" Tennessee public assistance program[s]. Following a hearing on December 16, the trial court granted the State's oral motion to dismiss the contempt petition.

On August 17, 2022, Father filed a petition for scire facias, civil or criminal

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] It is the policy of this Court to abbreviate the names of children to protect their privacy and identities. Father's paternity is not disputed.

contempt, and attorney's fees.  In his petition, he stated:

> On or about May 13, 2022, Father provided the parties' child with minor medical care after she was hit in the forehead with a baseball bat when her sister swung the bat and accidentally hit the minor child on the backswing. Father took child to Methodist North and the child was given three stitches. Father informed Mother of the incident and of the treatment provided to the child.

Father asserted that Mother "began withholding" the child on June 5, 2022, allegedly for "safety reasons" and because the child "'needed to complete her medication.'"  Father also stated that he believed that Mother had "made false allegations of child abuse resulting in Father being interviewed by the Tennessee Department of Children's Services" ("DCS") on June 15.  He also stated that DCS had not contacted him further.  Father also filed a petition to modify the parenting plan to name him primary residential parent and award Mother reasonable visitation.  He submitted that Mother's actions withholding the child and "alienat[ing] the child from Father[]" constituted an unforeseen material change of circumstances and asserted that modification was in the child's best interests.

On October 5, 2022, Mother filed a motion to set aside the 2021 parenting plan for insufficient/ineffective service of process and lack of personal and subject matter jurisdiction.  In her petition, Mother asserted that she was a resident of Mississippi.  She further asserted that when Father filed his petition in April 2021, Father "had personal knowledge of Movant/Respondent's exact place of residence, and specifically, that she had been an adult resident citizen of the State of Mississippi for many years even prior to the minor child being born."  Mother contended that she was visiting her father in Millington before he passed away in January 2021 and asserted that "[t]his was her only connection to the State of Tennessee[.]"  She also asserted that Father was "well aware of the reason for her visits" and that Father filed his petition "upon learning that [Mother] would be back in Tennessee moving some of [her father's] belongings."  She also asserted that the child was a resident of Mississippi and "had been such for her entire life."  She submitted that the trial court accordingly lacked personal and/or subject matter jurisdiction over the matter under Tennessee Code Annotated  section 36-6-216.  Mother also alleged insufficiency of process.  She contended:

> . . . the said paperwork served on [Mother] contained no court date in which to appear and defend the action, and gave no notice of when the matter was to be heard. A letter that contained the time and date of the hearing was then intentionally mailed to [Mother's] deceased father's address, after [Mother] had already advised both the attorney, and [Father] that she did not live there. As a result, [Mother] was not aware of the court date. Said letter was sent by [Father's] attorney while she was in active communication with [Mother] via email. After representing to [Mother] that the parties were negotiating in the matter, said [Father] and attorney appeared in court and obtained a default

- 3 -

judgment against [Mother].

On October 27, Father answered and moved to dismiss Mother's motion. Father asserted that Mother and the child were Tennessee residents when he filed his April 2021 petition and for at least six months prior to the petition. He asserted that the child had attended preschool in Atoka, Tennessee, for at least six months prior to the June 2, 2021, hearing and that the child was enrolled in the preschool "from August/September 2020 until Mother moved [the child] from the preschool on or about August 2021." Father also submitted that Mother had availed herself of the Tennessee court system and had filed a petition through the State of Tennessee to set child support in July 2021. He alleged that the July petition stated that the "child now resides with [Mother] in Tipton County, Tennessee."

On March 6, 2023, Father filed a motion styled: MOTION FOR EX PARTE ORDER FOR TEMPORARY MODIFICATION OF THE EXISTING RESIDENTIAL SCHEDULE VIA TEMPORARY EMERGENCY ORDER AND PETITION FOR ENFORCEMENT OF THE PARTIES' PERMANENT PARENTING PLAN. In his motion, Father asserted that Mother had withheld the child from him since June 5, 2022, in violation of the parenting plan. He also asserted that "Mother ha[d] engaged in flagrant parental alienation by withholding the minor child from Father and/or refusing all of Father's requests for parenting time." Father alleged that Mother "fled the state with the minor child and moved to . . . Mississippi." Father prayed for an *ex parte* order granting him "temporary emergency custody . . . with Mother having supervised visitation with minor child in the State of Tennessee[]" and for attorney's fees.

Following a hearing on August 3, 2023, the trial court found Mother to be guilty of civil contempt for withholding the child for over a year and for failure to abide by the Tennessee Relocation Statute. The court took Father's request that Mother be found guilty of 215 counts of contempt under advisement. The court granted Father parenting time beginning on August 3 and ordered the parties to operate under the June 2021 parenting plan, with alternate weeks to begin and end on Thursday evenings. The court entered its order on September 13, 2023, *nunc pro tunc* to August 3, 2023.

An additional hearing was held on September 13, 2023, and the trial court entered its findings of fact and conclusions of law on December 19, *nunc pro tunc* to September 13. The trial court found that the officer's return filed with the court demonstrated that, on April 12, 2021, Mother was personally served at her address in Tennessee. The court also found that Father's motion for default judgment and notice of hearing were served on Mother at the same Tennessee address. The trial court further found:

> On May 28, 2021, Mother wrote to Father's counsel acknowledging receipt of the Notice of Hearing setting the Motion for Default Judgment for hearing on June 2, 2023. Despite Mother having knowledge of the hearing date,

Mother failed to appear before the Court on June 2, 2021.

The trial court additionally found that the parties had abided by the parenting plan from June 2, 2021, until June 5, 2022. The court noted that "the Child was hit in the head with a baseball bat while playing with her half-sister during Father's parenting time" and, on June 3, 2022, Mother made allegations to DCS "that Father was physically abusing the child and exposing the child to drugs." The trial court found that, at the August 2023 hearing, Mother admitted that she had withheld the child for more than a year and asserted that withholding the child was warranted until DCS concluded its investigation regarding her allegations. The court also found that DCS records reflected that Mother's "allegations against Father were unsubstantiated and the case was closed on June 29, 2022." The trial court noted that Mother testified that she was unaware of the outcome of the investigation and that she "never heard from DCS after being interviewed." The court additionally noted that the DCS case worker testified that she investigated the referral; the case was closed on June 29, 2022; she spoke to Mother on the telephone at the end of June 2022; and she notified Mother that the allegations were unsubstantiated and the case was closed. The trial court stated that the caseworker "also testified that she specifically recalled during her telephone call with Mother, that Mother was upset about the investigation being closed and about her allegations against Father being unsubstantiated." The court determined: "As Mother's testimony consistently conflicted with evidence in the record and the testimony of both Father and the DCS caseworker, La'Kia Harvey, the Court finds that Mother's testimony was not credible."

The trial court found that Mother admitted that she had willfully withheld the child on the 214 instances as alleged by Father and therefore willfully and knowingly violated the terms of the parenting plan. Accordingly, the court found Mother to be guilty of 214 counts of civil contempt for violation of the parenting plan. The trial court also found Mother's testimony that she relocated to Mississippi before Father filed his April 2021 petition to be contrary to the evidence and not credible. Thus, the court held Mother in contempt for an additional count for willfully and knowingly violating the relocation statute set forth in Tennessee Code Annotated section 36-6-108 ("the relocation statute"), bringing Mother's total to 215 findings of contempt.

The trial court further determined that Mother's actions withholding the child constituted a material change of circumstances. After discussing the factors enumerated at Tennessee Code Annotated section 36-6-106(a) and concluding that the child was harmed by Mother's conduct, the trial court determined that modification of the parenting plan was in the child's best interests. The court designated Father to be primary residential parent; awarded Father final decision-making authority; granted Mother parenting time every other weekend during the school year and alternate weeks in the summer; and modified the holiday parenting schedule. The court reserved the issue of child support. The trial court awarded Father attorney's fees pursuant to Tennessee Code Annotated sections 36-6-236 and 36-5-103 and, by order entered December 20, ordered Mother to pay Father attorney's

fees of $39,129.27.  After a hearing on June 5, 2024, by order entered July 25, 2024, the trial court set Mother's child support obligation at $400 per month, retroactive to September 2023.  The court found that Mother had paid no child support and ordered her to pay retroactive child support in the amount of $3,600.00 at the rate of $25.00 per month beginning June 1, 2024.  The trial court also ordered Mother to pay Father's attorney's fees in installments of $50 per month beginning June 1, 2024.  (The court ordered Mother to pay combined child support, arrearages, and attorney's fees in two equal installments of $237.50 on the first and second pay period of each month.)  The trial court entered final judgment on July 25, 2024, and Mother filed a timely notice of appeal.

## II. ISSUES PRESENTED

Mother raises the following issues for our review:

I.      Whether the trial court lacked subject matter jurisdiction in this case.
II.     Whether the trial court erred by finding Mother in Civil Contempt.
III.    Whether the trial court erred by modifying the Permanent Parenting Plan.
IV.     Whether the trial court erred by ordering Mother to pay Father's attorney fees.

Father raises no additional issues for review but requests attorney's fees on appeal.

## III. STANDARD OF REVIEW

This is a non-jury case.  Accordingly, our review of the trial court's findings of fact is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012).  The evidence preponderates against the trial court's findings of fact when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted).  Therefore, the trial court's factual findings must contain sufficient underlying facts that clearly disclose the basis of the court's determinations. *Lovelace v. Coley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted).  Appellate review of a trial court's conclusions of law is *de novo* with no presumption of correctness. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).  Additionally, the appellate courts recognize that trial courts are in the best position to assess witness credibility. *Brown v. Brown*, 571 S.W.3d 711, 720 (Tenn. Ct. App. 2018) (citation omitted).  Therefore, when the trial court has seen and heard witnesses, we afford great deference to findings based on the court's credibility determinations. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007).  Findings based on witness credibility will not be reversed unless the record contains clear and convincing evidence to contradict them. *Id*.

# IV. ANALYSIS

## A. Subject Matter Jurisdiction

We turn first to whether the trial court had subject matter jurisdiction to adjudicate this case. A court's subject matter jurisdiction involves its authority to adjudicate a case brought before it. *Roberts v. Tennessee Dep't of Env't & Conservation*, 716 S.W.3d 68, 76 (Tenn. Ct. App. 2025) (citations omitted). "A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from legislative acts." *Id*. (quoting *In re S.L.M.*, 207 S.W.3d 288, 295 (Tenn. Ct. App. 2006)) (additional citations omitted). Subject matter jurisdiction cannot be waived, and it cannot be conferred by agreement of the parties. *Id*. Any order or judgment entered by a court lacking subject matter jurisdiction is void. *Id.* (citation omitted). Whether a court has subject matter jurisdiction is a question of law that we review de novo, with no presumption of correctness afforded to the trial court. *Id*. at 72.

> Tennessee Code Annotated section 36-6-216 provides, in relevant part:
> (a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

Tenn. Code Ann. § 36-6-216(a)(1).

Mother and Father dispute whether Mother and the child were Tennessee residents for the six months preceding April 2021, when Father filed his original petition to establish a parenting plan. In her brief, Mother submits that she and the child relocated to Mississippi in Fall 2020 and argues that the trial court lacked subject matter jurisdiction when Father filed his April petition. She maintains that, in his petition, Father erroneously stated that the child resided with Mother in Millington, Tennessee, and Father neither alleged nor proved that Mother had been a Tennessee resident for the six months preceding his petition. She contends that the trial court accordingly erred in finding that it had subject matter jurisdiction to adjudicate Father's initial petition.

Father, on the other hand, argues that Mother and the child lived in Tennessee at least until April 2021. He asserts that the child attended daycare in Tennessee until "at least May of 2021," and that TennCare records establish that Tennessee paid for the child's daycare until August 2021. Father further argues that, even assuming Mother's account of the facts is true, the trial court had "at least" extended home state jurisdiction as described in *Doss v. Doss*, 2005 WL 946744 (Tenn. Ct. App. Apr. 25, 2005). Father submits that the

trial court specifically found Mother's testimony regarding her relocation to Mississippi to not be credible. As noted above, a trial court's credibility determinations will not be reversed absent clear and convincing evidence to the contrary. *In re M.L.P.*, 228 S.W.3d at 143.

The trial court's jurisdiction in this case depends on when Mother and the child relocated to Mississippi. As Father asserts, the trial court found that Mother's testimony that she relocated to Mississippi in Fall 2020 was not credible. In its December 2023 order, the trial court found:

> The payment records from Little Angels Daycare marked as Exhibit 15 reflects the State of Tennessee paying vouchers to Little Angels for child's full time attendance, for our child, the child we're dealing, full time attendance at daycare through August 15, 2021.

The trial court further stated:

> Based on the totality of the documentary evidence and the testimony of Father and the daycare worker and the court file, the Court finds Mother's testimony about when she relocated to with the child to Mississippi is not credible.

Upon review of the record, we find no clear and convincing evidence that would contradict the trial court's credibility determination. Additionally, it is undisputed that the child was born in Tennessee, and the exhibits in the record demonstrate that the child was approved for TennCare benefits in 2019. Coverage was renewed in May 2020. In September 2020, TennCare advised Mother in writing that a change regarding the child had been reported and requested proof of eligibility. In July 2021, TennCare advised Mother that its records established that she was a Tennessee resident but, "for a short time," was living outside of Tennessee and that benefits would change in August 2021. The TennCare records indicate claims paid in May 2021. Additionally, Tennessee Department of Human Services' records demonstrate that the Department provided daycare benefits for the child from November 2020 through August 15, 2021. The evidence does not preponderate against the trial court's finding that Mother and the child were residents of Tennessee for the six-month period before Father filed his April 2021 petition. We are satisfied that the trial court properly exercised jurisdiction over this case.

## B. Civil Contempt

We turn next to whether the trial court erred in holding Mother in civil contempt. A claim of civil contempt for alleged willful disobedience of a court's order has four essential elements:

(1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful."

*Strickland v. Strickland*, 644 S.W.3d 620, 633 (Tenn. Ct. App. 2021) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013)). In the context of civil contempt, willful conduct "consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing."

*Id.* (quoting *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 357 (Tenn. 2008) (quoting *State ex rel. Flowers v. Tenn. Trucking. Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006))). The petitioner bears the burden to establish that the respondent has failed to comply with a court order. *State ex rel. Bass v. Gonzalez-Perez*, No. W2016-00655-COA-R3-JV, 2017 WL 2210758, at *6 (Tenn. Ct. App. May 19, 2017) (citing *Chappell v. Chappell*, 261 S.W.2d 824, 831 (Tenn. 1952)). "Whether an order has been violated and whether the violation was willful present factual issues that we review de novo, affording a presumption of correctness to the trial court's findings." *Strickland*, 644 S.W.3d at 633 (citation omitted)

Appellate review of a trial court's contempt decision is the deferential abuse of discretion standard. *Id.* (citations omitted). Our Supreme Court has explained:

An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. Discretionary decisions must take the applicable law and relevant facts into account. Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs [sic] reasoning that causes an injustice to the complaining party.

*Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008) (internal citations omitted).

In her brief, Mother asserts that Father failed to attach a proposed permanent parenting plan to his August 2022 "Petition for Scire Facias, Citation for Civil and/or Criminal Contempt and Attorney's Fees, Petition to Modify Permanent Parenting Plan and for Immediate Injunction Relief" as required by Tennessee Code Annotated section 36-6-405. Mother also asserts that the trial court held her in contempt for violating the relocation

statute and contends that Father did not allege a violation of the statute in his August 2022 petition. She acknowledges, however, that Father argued that Mother had "fled the State" in his March 2023 motion. Father, on the other hand, asserts that Mother did not object to questions about the relocation statute at trial and the issue was tried by consent.

As noted above, Mother responded to Father's August 2022 contempt petition with a motion to dismiss for lack of jurisdiction. In her brief, Mother points us to nothing in the record to demonstrate that she raised the issues of 1) Father's failure to assert violation of the relocation statute as a ground in his August 2022 petition or 2) Father's failure to attach the parenting plan to his petition in the trial court. It is well-settled that "a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal." *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009). Additionally, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02. Upon review of the record, we note that, upon questioning by Father's counsel, Mother testified regarding whether she sought the court's permission to relocate to Tennessee without objection. This argument is without merit.

Mother also asserts that the parenting plan was ambiguous where it provides: "The parent starting their visitation will pick up the minor child from the other parent unless agreed upon by both parties." She argues: "While the phrase 'unless agreed upon by both parties' may create an ambiguity, if Father was concerned the agreement was ambiguous, he only had to appear at Mother's house to pick up the child. Father never testified he appeared at Mother's house pursuant to the PPP." Mother does not argue, however, that she found the plan to be ambiguous, and she acknowledged at trial that she intentionally withheld the child from Father because she believed it to be in the child's best interest pending outcome of the DCS investigation. As noted above, the trial court determined that Mother's testimony that she was not aware that the investigation had been closed was not credible. This argument likewise is without merit.

Mother additionally contends that she did not actually violate the parenting plan. She argues:

> Mother could only deny Father's parenting on Sunday at 7:00 pm. every other week. Therefore, according to the PPP, from June 5, 2022, through August 3, 2023, Father should have driven to Mother's house thirty-one times to pick up the child. He did none. Since Mother did not refuse to deliver/transfer the child to Father when he showed up at her door to pick up the child, it cannot be alleged that Mother violated the terms of the PPP.

Father, on the other hand, argues that his contempt petition specifically alleged that Mother was withholding the child and asserts, "[b]ased upon the totality of the circumstances described herein, continuing to drive two hours every other week would have been futile."

Father relies on *Baggett v. Baggett*, 422 S.W.3d 537, 545 (Tenn. Ct. App. 2013), for the proposition that "the law does not require futile acts."

Mother acknowledges that she "informed Father that she would not allow the child to return to Father[]" after the child was injured while in Father's care. Mother contends, "[f]rom that point forward, Father made two (2) attempts (his testimony) to meet to pick up the child. Mother's testimony was that Father only communicated with her once and that Mother actually went to Walmart, but Father was not there."[3] She also argues,

> Pursuant to the terms of the PPP, if the parties did not agree otherwise, Father's obligation was to pick up the child from Mother's house. However, from May 2022 until the Court hearing Father never showed up at Mother's house to pick up the child, and Father never showed up in Hernando to pick up the child Further, Father never testified that he appeared at Mother's house to pick up the child and Mother refused to transfer or allow the child to go with Father.

However, from our review of the record, we note that when asked whether she denied violating the court's order, Mother replied that she did not. Mother's statement also contradicts the argument in her brief that the trial court's finding that she willfully violated the court's order "has no basis in the proof." Additionally, although Mother testified that she was attempting to protect the child, Mother took no steps to modify the parenting plan but responded to Father's contempt petition with a motion to dismiss for lack of jurisdiction. The parties were aware of the requisites of the parenting plan and operated under it for a year. We cannot say the trial court abused its discretion by holding Mother in civil contempt.

### C. Modification of the Parenting Plan

We begin our discussion of the trial court's decision to modify the 2021 parenting plan by noting we must employ a "*limited* scope of review . . . in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citation omitted). Our Supreme Court has emphasized:

> [a] trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings.

---

[3] All citations to the record are herein omitted.

*Id*. (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)).  The *C.W.H.* court continued:

> Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans. *Id.* at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)). "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Id.* (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

*Id*. Therefore, appellate courts review a trial court's decision regarding parenting schedules under the deferential abuse of discretion standard.  *Id.* (citation omitted).  We may not reverse the trial court's decision unless it "'falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'"  *Id*. (quoting *Kelly v. Kelly*, 445 S.W.3d 685, 696 (Tenn. 2014) (quoting *Armbrister*, 414 S.W.3d at 693)); (additional citation omitted).  *Id*.

When considering a petition to modify a permanent parenting plan, the trial court must employ a two-part test.  *Id*.  First, it must determine whether a material change of circumstances has occurred."  *Id*.  If it finds a material change of circumstance, the court must then apply the factors set forth in Tennessee Code Annotated section 36-6-106(a) to determine whether modifying the plan is in the child's best interests.  *Id*.

In her brief, Mother asserts that neither party presented proof relating to modification of the parenting plan.  She argues that the trial court determined that the issue of contempt was the best issue to begin with and that the court stated at trial:

> What I am inclined to do today just as a temporary measure was order — allow Dad visitation and do the week on, week off just temporary until the Court can decide how I am going to handle this going forward. I am not sure — I am not sure that we really got fully into the issue of just a complete change of custody. I think what you were asking, Ms. Putnam, is that the Court really put that in place as a sanction. That Mom, because she's disobeyed the court order that the Court just reverse things, make Father the primary residential parent, let him make up his time in some fashion

She submits:

> It is evident, even from the Court's own statement, that the proof never ventured into the modification issues. However, when the parties returned to

- 12 -

> Court for the ruling on the Contempt issue, the Trial Court modified the PPP
> and did so as a sanction for Mother's alleged contempt.

Father, on the other hand, argues that the proceedings were neither bifurcated nor limited to the issue of contempt and that the court heard proof regarding his petition to modify the parenting plan. He further submits that counsel for the parties addressed the modification issue.

We begin our discussion of this issue by noting that the single material change of circumstance found by the trial court was Mother's decision to withhold the child from Father for more than a year following the child's injury in May 2022. In its findings, the trial court stated: "the change had a detrimental and meaningful effect on the child's well—being." The trial court then engaged in the statutory best-interest analysis. Upon review, we observe that the trial court found that many factors were either equal or not applicable. Although it found that several factors favored Father, those findings were predicated solely on the undisputed fact that Mother withheld the child for over a year, thereby causing "the child's relationship with Father [to] suffer[]." Indeed, with respect to factor ten – "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment[] – the court found "[d]ue to Mother's unilateral conduct in removing the child from the stable and satisfactory environment of spending equal time with both her parents, the child's relationship with Father suffered." It then determined that the factor favored Father. However, it is undisputed that Mother was the primary residential parent throughout the child's life, and the existing parenting plan provided for roughly equal parenting time. With respect, while we do not condone Mother's actions, the child lived in a stable, satisfactory environment with Mother. The trial court's conclusion did not consider the impact that "upsetting the apple cart" would have on *the child*.

Additionally, with respect to factor nine – the child's interaction with siblings – the court determined that Mother's actions were detrimental to the child's relationship with her half-sister in Father's household. However, the trial court did not consider the impact that modification of the parenting plan would have on the child's relationship with her half-sister in Mother's household.

From our review of the record, we note that Mother's testimony related primarily to whether she resided in Tennessee in Spring 2021 and when and why – from her point of view – she withheld the child from Father. In short, Mother testified that she was a resident of Mississippi and feared for the child's safety while in Father's care. Similarly, Father's testimony regarding the child's best interest was limited to his denial of physically harming the child and the impact not seeing the child had on Father – and, to an even more limited extent – on Father's older child. There is nothing in this record to demonstrate that modification of the parenting plan – as opposed to enforcing it – is in the child's best interest. Indeed, at the August 2023 hearing, the trial court stated: "I am not sure that we

- 13 -

really got fully into the issue of just a complete change of custody." The court further stated:

> I don't know that I am going to change custody based on what has happened, but I do certainly believe that Mom was in contempt of court, didn't obey the order, let way too much time pass without any effort to try to reconcile the situation with Dad. And there are going to be sanctions that are going to be put down.

As Father asserts in his appellate brief, the trial court also acknowledged that the matter was docketed as a hearing on Father's petition to modify, and the court stated that it believed it could make a decision based on the August 2023 hearing. Additionally, we observe that the court conducted a hearing with counsel in September 2023 to address the entire matter. We also note that most of the discussion between the court and counsel pertained to Mother's violation of the April 2021 parenting plan. Further, the trial court appears to have concluded that modification of the plan was in the child's best interest because 1) Mother violated the plan and 2) the child had done well under the 2021 plan. However, the parent seeking modification of a permanent parenting plan carries the burden of proof to demonstrate by a preponderance of the evidence that "'(1) that a material change in circumstances has occurred and (2) that a *change* in custody or residential schedule is in the child's best interest.'" *Rushing v. Rushing*, 692 S.W.3d 82, 94 (Tenn. Ct. App. 2023) (quoting *Webb v. Webb*, No. M2008-02039-COA-R3-CV, 2009 WL 3321038, at *3 (Tenn. Ct. App. Oct. 14, 2009)); Tenn. Code Ann. § 36-6-101 (a)(2)(C).

A parent's failure to abide by a parenting plan may constitute a material change in circumstances. Tenn. Code Ann. § 36-6-101(a)(2)(C). Thus, we affirm the trial court's finding regarding a material change of circumstance. However, the evidence does not support a determination that modifying the parenting plan to designate Father residential parent and provide Mother limited visitation is in the child's best interest.

Notwithstanding Father's argument that the issue of modification of the parenting plan was addressed by counsel, we remind the parties and counsel that statements and arguments made by counsel do not constitute evidence. *In re Conservatorship of Malone*, No. W2024-00264-COA-R3-CV, 2025 WL 1938985, at *13 (Tenn. Ct. App. July 15, 2025), *appeal denied* (Dec. 11, 2025) (citing *Metro. Gov't. of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Greer v. City of Memphis*, 356 S.W.3d 917, 923 (Tenn. Ct. App. 2010)). From our review of the record, we find no evidence that modification – as opposed to enforcement – of the 2021 parenting plan is in the child's best interest. Indeed, there is no proof in the record – neither documentary nor testimonial – regarding the needs or best interests of, or harm to, the child. Although we are sensitive to the trial court's conclusion that Mother's actions likely harmed the child's relationship with Father, Father simply failed to carry his burden of proof to demonstrate that modification of the parenting plan to designate Father as primary residential parent is in the child's best

- 14 -

interests. Accordingly, we reverse the trial court's judgment modifying the 2021 parenting plan.

## D. Attorney's Fees

Under Tennessee Code Annotated section 36-5-103, a prevailing party may obtain an award of reasonable attorney's fees "in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order." Generally, "this [C]ourt will afford the trial judge . . . considerable discretion in determining a reasonable attorney's fee." *First Peoples Bank of Tennessee v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010) (citation omitted). However, when the trial court awards attorney's fees but does not determine that the amount of fees requested is reasonable, we will vacate the award and remand the issue to the trial court for a determination of reasonableness. *Id*. "'[U]ltimately the reasonableness of the fee must depend upon the particular circumstances of the individual case.'" *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 177 (Tenn. 2011) (quoting *White v. McBride,* 937 S.W.2d 796, 800 (Tenn.1996) (citing *Hail v. Nashville Trust Co.,* 31 Tenn .App. 39, 212 S.W.2d 51 (1948)).

In its December 2023 order granting Father's request for attorney's fees, the trial court ordered Mother to pay Father's attorney's fees in the amount of $39,129.37 and determined that the fees and expenses were "reasonable, necessary and appropriate in light of the facts and circumstances of this case." Additionally, in its July 2024 judgment, the trial court found that "Father was forced to incur unnecessary attorney's fees and litigation expenses due to Mother's egregious conduct throughout this litigation."

Although Father did not prevail with respect to his petition to modify the parenting plan, he did prevail on his contempt action, which, as noted above, comprised the majority of the proceedings. We have noted:

> The "prevailing party" determination is a fact-intensive inquiry. *Fannon v. City of LaFollette*, 329 S.W.3d 418, 432 (Tenn. 2010). A party "need not attain complete success on the merits of a lawsuit in order to prevail." *Buckley v. Carlock*, 652 S.W.3d 432, 445 (Tenn. Ct. App. 2022) (citation omitted). Instead, to achieve "prevailing party" status, a party must be awarded some judicially sanctioned relief on the merits of his or her claim. *Qualls v. Camp*, No. M2005-02822-COA-R3-CV, 2007 WL 2198334, at *6 (Tenn. Ct. App. July 23, 2007) (citations omitted); *see also Fannon*, 329 S.W.3d at 431 (Noting that a prevailing party for purposes of an award of attorney's fees is one who has succeeded on any significant issue in litigation which achieves some of the benefit sought in bringing suit) (citation omitted). The relief awarded by the court must "materially alter[ ] the legal relationship between the parties by modifying the defendant's behavior in a

way that directly benefits the plaintiff." *Id.* at \*7 (citations omitted).

*Wilson v. Wilson*, No. M2023-01026-COA-R3-CV, 2024 WL 1577423, at \*4 (Tenn. Ct. App. Apr. 11, 2024).

In her brief, Mother argues that she never had "a chance to challenge the proposed fees[.]" This argument is without merit – Mother had from December 2023 to July 2024 to challenge the trial court's award and failed to do so. We affirm on this issue.

## E. Attorney's Fees on Appeal

Unless required by statute of agreement, Tennessee litigants are responsible for their attorney's fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). Tennessee Code Annotated section 36-5-103(c) affords this Court the discretion to award attorney's fees "in regard to any suit or action concerning the adjudication of the custody . . . of any child[.]" Tenn. Code Ann. § 36-5-103(c). Whether to award attorney's fees on appeal is solely within the discretion of this Court. *Cooper v. Cooper*, 704 S.W.3d 784, 807 (Tenn. Ct. App. July 22, 2024). In view of the foregoing, we decline Father's request for attorney's fees on appeal.

## V. CONCLUSION

Accordingly, we affirm the trial court's determination that it had subject matter jurisdiction to adjudicate this case. We also affirm the trial court's judgment finding Mother in civil contempt and its award of attorney's fees to Father. We reverse the trial court's judgment regarding its best-interests determination and granting Father's petition to modify the parenting plan. Father's request for attorney's fees on appeal is denied. This matter is remanded for further proceedings consistent with this Opinion.

As a practical matter, we observe that the child has now started school and, therefore, modification of the parenting plan is or likely will be necessary. *See Carter v. Carter*, No. M2013-00193-COA-R3CV, 2013 WL 5568360, at \*2 (Tenn. Ct. App. Oct. 7, 2013). We conclude by urging Mother and Father to work together to devise and abide by a parenting plan that is in the best interests of the child they both love. Costs on appeal are assessed one-half to the appellee, Dylon Whitmore, and one-half to the appellant, Melyssa Atkinson, for which execution may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE